**Jimmie M. CAUSEY et vir, Appellants,**

v.

**NEWSOM TRUCK LINES, INC., Appellee.**

No. 13981.

Court of Civil Appeals of Texas.

Houston.

Nov. 1, 1962.

Rehearing Denied Nov. 29, 1962.

Otto E. Wiswell, Pasadena, for appellants.

Butler, Binion, Rice & Cook, Frank J. Knapp, Tom Alexander, Houston, for appellee.

WERLEIN, Justice.

Appellant, Mrs. Jimmie M. Causey, who was a single woman at the time her cause of action arose, joined by Tommie Causey, whom she later married, brought this suit to recover damages for personal injuries sustained by her as the result of a collision which occurred at approximately 10:30 p. m. on June 25, 1959 at the intersection of Chapman and Tarley Streets in the City of Houston. The trial court, on the verdict of the jury, entered judgment that appellants, Jimmie M. Causey and her husband, take nothing.

Appellants assert that the jury findings to Special Issue No. 1, that the driver of appellee's truck was not operating the same at a rate of speed in excess of that at which

a person of ordinary prudence in the exercise of ordinary care would have operated the same, and to Special Issue No. 3, that immediately prior to the collision in question the truck driver did not fail to keep a proper lookout, are against the great weight and preponderance of the evidence.

We have carefully examined the entire record and particularly all the testimony relative to the collision in question. The evidence shows that Chapman Street is a paved street running in a north and south direction and that Tarley Street is a gravel street running in an east and west direction, and that Chapman Street has a great deal more traffic on it than Tarley Street. The only eye-witnesses testifying to the collision were appellant, Mrs. Causey, and Mr. J. T. Beaty, the driver of appellee's truck. Mrs. Causey testified that she was riding in the right front seat of the 1957 Plymouth driven in a westerly direction by Tommie Causey, which collided with the truck driven by J. T. Beaty going north on Chapman Street. She knew nothing of the details of how the collision happened because she was almost asleep at the time.

J. T. Beaty, the driver of the truck in question, testified in substance that the intersection of Chapman and Tarley Streets has no traffic control signals of any kind and is an entirely open intersection; that he was driving an empty R–200 International Truck and trailer which weighed some 18,000 pounds; that he was driving the truck at a speed of 30 miles per hour up until he first saw the automobile in which Mrs. Causey was a passenger, and at that time he was about 21 feet from the intersection; that at such point he had his foot on the brake and was able to apply the brake immediately and swerve to the left continuing on into the intersection decreasing his speed to 15 miles per hour before the impact; that he estimated that the automobile in question was about 40 feet from the intersection when he first saw it; that he was more or less keeping his attention straight ahead and when he got 21 feet south of the intersection he had a fleeting glimpse of the automobile, and then put all his attention on the truck trying to control it; that while sitting in the cab of the truck, the top of his head was about 7 feet above the ground, giving him a better opportunity to see in all directions than if he were sitting in an automobile; that at the southeast corner of the intersection there are no obstructions other than trees and weeds, and that he guessed he was in a position where it was possible to observe the traffic coming from his right on Tarley Street if he were particularly looking for it; that the automobile hit the right front wheel, running board and side gas tank of the truck; that he finally stopped the truck in the ditch about 50 feet past the intersection; that he could stop the truck and trailer in about its length; and that the collision occurred right in the middle of the intersection of Chapman and Tarley Streets.

Appellee's witness, Sgt. B. C. Lancaster, who at the time of the collision was an investigator in the Accident Division of the Police Department of the City of Houston, testified in substance that Chapman Street was a 20 foot-wide-asphalt street running north and south, and Tarley Street was a 19 foot-gravel street running east and west; that when he arrived on the scene of the accident he found the Plymouth in the ditch on the northeast corner of Tarley and Chapman and the truck partially in the street and ditch headed in a northeasterly direction; that the truck was 46 feet over-all, approximately, and the trailer on the truck was 32 feet, making a total of 78 feet, and the automobile was 17 feet long, approximately; that at the southeast corner of the intersection there were high weeds which would obstruct one's vision to some degree; that the point of impact was 4 feet from the east curb and 8 feet from the south curb; that the Plymouth struck the right front side of the truck approximately at the door of the truck, the truck ending up in a position which was 53 feet from the point of impact and the Plymouth 33 feet therefrom; that the Plymouth left 15 feet of skid marks on the wet gravel and the truck 24 feet of

skid marks on the dry asphalt measuring back from the rear wheels of the vehicles; that the truck was approximately 18 feet in the intersection when the Plymouth was 4 feet in the intersection; that there were no traffic controls at the corner; that he could not testify how far back down south on Chapman it was before there was any type of structure, but that the lot was pretty well open and that you could see across there but your vision was obscured; that you could see a house across the street on the north side of Tarley but couldn't see the actual street.

When asked whether he would say that you could see across the intersection back 200 feet south on Chapman Street, he stated: "I doubt at 200, possibly 100 but I don't recall the exact presence of any buildings there other than the fact that you could look across the intersection." He also testified that one could see across through the weeds, and that if vehicles were coming with headlights on, they should be seen, and particularly so if the eye balls of the driver going north are 7 feet from the level of the ground; that such position would aid a man in his vision quite some distance down Tarley Street if he was looking; that in his opinion the Causey car was traveling at least 30 miles per hour prior to the collision; that if the truck driver was going 30 at the time he was 21 feet south of the intersection he was going 10 miles faster than a safe speed, in his opinion as an expert; that if the driver of the truck saw the automobile coming from his right on Tarley Street when he was 21 feet south of the intersection and was going 30 miles per hour, it was a little late to be looking when he had ample opportunity to look much earlier; that the truck driver couldn't stop since he didn't have enough distance; that a prudent person operating an 18,000 pound tractor and trailer should operate the truck at such speed, keeping proper lookout and allowing for any reaction time, that he should be prepared to bring the truck under control without colliding with anyone at an intersection.

After carefully considering all of the evidence in any way relating to the collision in question, we have concluded that the finding of the jury to Special Issue No. 3, to the effect that appellee did not fail to keep a proper lookout, is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. In re King's Estate, 150 Tex. 662, 244 S.W. 2d 660; Tudor v. Tudor, 158 Tex. 559, 314 S.W.2d 793.

The undisputed evidence is to the effect that although there were high weeds on the southeast corner of the intersection, the lot was pretty well open and that one driving north on Chapman Street could see through the weeds vehicles with headlights traveling west on Tarley Street as they approached such intersection, and particularly so if the driver was elevated as was the truck driver, since such position would aid him in his vision quite some distance down Tarley Street if he was looking; that if the driver of the truck going 30 miles per hour north on Chapman did not see the automobile coming from his right on Tarley Street until 21 feet south of the intersection, it was late to be looking since he had ample opportunity to look much earlier; and that one situated as was the truck driver could see across the intersection without any buildings interfering possibly when 100 feet south on Chapman Street.

We think the testimony of the truck driver clearly shows that he was not keeping a proper lookout. He testified in effect that he was looking straight ahead and that he was 21 feet from the intersection going 30 miles per hour when he first got a fleeting glimpse of the automobile approaching the intersection, from his right; that having his head 7 feet above the level of the ground gave him a better opportunity to see in all directions than if he were in an automobile; that at the southeast corner of the intersection there were no obstructions other than trees and weeds and that he was in a position where it was possible to observe the traffic coming from his right on Tarley Street if he were looking for it.

It seems evident that if the truck driver had maintained a proper lookout he would have seen the automobile approaching the intersection from his right much sooner than he did, and in ample time to have yielded the right of way and prevented the collision. In driving the 78 foot truck and trailer into the intersection, he did so under circumstances which reasonably indicated danger of collision, thus requiring him to yield the right of way. Kersey v. Swidler, Tex.Civ.App., 223 S.W.2d 242, writ dism., and authorities cited. See also Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273; Rollin v. Condra Funeral Home, Tex. Civ.App.1959, 321 S.W.2d 108; Standard Paving Co. v. Webb, Tex.Civ.App., 118 S. W.2d 456.

In view of our holding, we think it unnecessary to consider appellants' other Points of Error.

Reversed and remanded.