Porter HAMBY, Appellant,

v.

T. H. KEY, Appellee.

No. 6049.

Court of Civil Appeals of Texas.

Beaumont.

July 19, 1956.

Rehearing Denied Sept. 19, 1956.

G. Woodson Morris, San Antonio, for appellant.

Blakeley & Williams, Houston, Bowers & Neinast, Caldwell, for appellee.

ANDERSON, Justice.

Appellant, Porter Hamby, who will also be referred to as plaintiff, sued to recover damages for personal injuries he received as the result of a collision between a pick-up truck that was being driven by defendant and an automobile that was being driven by some undisclosed third person. Appellant was riding in the pick-up truck with defendant Key, and claims to have been doing so as Key's employee. He charged in his petition that defendant was guilty of various acts of negligence which proximately caused the collision. The defendant answered by general denial, a general plea of contributory negligence on the part of plaintiff, and by a special plea to the effect that at the time of the collision plaintiff was riding with him as a mere guest. Trial to a jury resulted in an instructed verdict and judgment in favor of the defendant and the plaintiff appealed. As was proper in the circumstances, the appeal was originally perfected to the Galveston Court of Civil Appeals, and the case was then transferred to this court by the Supreme Court.

The only question for decision is that of whether the trial court erred in di-

recting a verdict in favor of the defendant, and so we must review the evidence in the light of plaintiff's pleadings.

The collision occurred around 6:00 p.m. on December 31, 1952. The motor vehicles involved were traveling in opposite directions along the same public highway and met head-on. Plaintiff and defendant had set out from Rockdale, Texas, to go to Caldwell, Texas, and were traveling southward. They were slightly more than twenty miles from Rockdale and within a mile and a half or two miles of Caldwell when the collision occurred. The highway was straight and level at the scene of the collision but there was evidence to the effect that it passed over a slight rise or hill nearby. Whether this hill was north or south of where the cars met was not shown. The highway was paved to a width of more than twenty feet, and wide shoulders, on which, according to the evidence, an automobile could be driven safely at speeds of from 25 to 30 miles per hour, flanked the pavement on either side. There was also evidence to the effect that defendant could have driven on off the shoulder of the highway for quite a distance before encountering a fence or other obstacle.

In addition to alleging that the collision occurred while defendant was operating his automobile on the wrong side of the road and at a violent and unlawful rate of speed, plaintiff pleaded that defendant was negligent in the following respects: (1) In operating his automobile "on the wrong side of the road." (2) In operating his automobile "at a violent and excessive rate of speed beyond that provided by law." (3) In failing "to turn his automobile aside before striking and running head-on into the automobile coming in the opposite direction." (4) In failing "to sound his horn or gong." (5) In failing "to apply his brakes in time to avoid running into the car coming in the opposite direction." (6) In failing to keep a proper lookout. (7) In failing to have his automobile under proper control. (8) In failing to have his automobile equipped with brakes in good work-

ing order. (9) In operating his automobile "in a negligent and unlawful manner." These alleged acts of negligence were also alleged to have been proximate causes of the collision and of plaintiffs' injuries.

■ The only evidence with reference to the circumstances of the collision was supplied by the testimony of the plaintiff and defendant, mostly that of the defendant, and there can be no question that it failed to present a fact issue regarding any of plaintiff's allegations of negligence if such allegations are construed literally. It was undisputed that the collision occurred on defendant's proper side of the highway—the west side. The defendant estimated that he was driving at a speed of from 35 to 40 miles per hour as he approached the scene of the collision. Plaintiff himself expressed the opinion that defendant was not driving in excess of 40 miles per hour and had not done so at any time after leaving Rockdale. This rate of speed was neither unlawful nor "violent and excessive" in the circumstances reflected by the record. The defendant testified that he turned to the right in an effort to avoid the collision and his testimony was corroborated by that of the plaintiff, who testified that just before the collision the pick-up was turned to the right so sharply that it threw him toward his left. There was no evidence to show that, in so turning, the defendant did not act as quickly as possible after the occasion for turning aside arose. There was absolutely no evidence to show that defendant failed to sound "his horn or gong." There was likewise none to show that he failed to apply his vehicle's brakes or that the brakes were defective. Furthermore, there was no evidence to show that defendant was not keeping a proper lookout or that he did not have his vehicle under proper control. The proximity of the two vehicles to each other when defendant first discovered the approaching automobile—itself a quantity which was left highly uncertain by the evidence—was the only thing suggestive of improper lookout, and there was no evi-

dence to show that in the circumstances the defendant reasonably should have seen the automobile before he did or even that he could have seen it earlier. There was no evidence to suggest that defendant did not have proper manual control of his pick-up or that the pick-up was defective in any particular that rendered his manual control of it ineffective, and the speed at which he was driving was not such in the circumstances as to raise an issue with reference to proper control.

Plaintiff requested the trial court to submit to the jury a special issue as to whether "just prior to the accident" the defendant was operating his automobile on the wrong side of the road. He also requested submission of an issue with reference to proximate cause, to be answered only in the event the primary issue should be answered in the affirmative.

█ Assuming, without deciding, that plaintiff's pleadings were sufficient to support submission of the primary issue, we are of the opinion that the evidence did not require that the issue be submitted to the jury. Plaintiff did not himself testify that the vehicle in which he was riding was ever on its wrong side of the highway. He said that until the pick-up turned sharply to the right, throwing him to his left, he had been looking out the window to his right and had neither seen the approaching automobile nor been paying attention to defendant's driving. He further said that when he looked forward, the approaching automobile was immediately in front of him, and it is to be inferred from his testimony that it was then so close that the collision was no longer avoidable. No inference that defendant was on the wrong side of the highway can be drawn from the fact that he cut sharply to his right just before the collision occurred, because there was no evidence as to where on his proper side of the highway the two vehicles met. For all that appears of record the point of impact may have been completely off the pavement, on the shoulder of the highway.

█ The defendant's own testimony did not, with requisite certainty, place him on the wrong side of the highway preceding the collision. He testified in one instance that he "might have" gotten on the wrong side of the road while he and the driver of the other vehicle were zig-zagging back and forth in an effort to avoid the collision but he did not admit as a fact that he actually did so. When counsel for plaintiff thereupon assumed in a question that defendant had gotten on the wrong side of the road and suggested that defendant then made a quick movement to get back on his proper side, defendant answered that he "did that," but when defendant's answer is read in context it amounts to no more than that if he did in fact get on the wrong side of the road he immediately pulled back to his proper side of it. In another instance, defendant testified as follows: "Q. Then, when you were on your left-hand side of the road, how long do you say you traveled on your left-hand side? A. I'd say half a minute. Q. How many yards? A. Well, now, that's something I wouldn't know, but I'd say forty or fifty or sixty yards; it could be either way." Once again, however, when this testimony is fairly construed in context, we think it apparent that defendant understood himself to be testifying with reference to an interval during which he had pulled to his left and back onto the pavement after, as he represented, having driven completely off the pavement on his proper side because of the presence of the other vehicle in his traffic lane, and not that he was testifying with reference to driving on his left or the wrong side of the center-line of the highway. Defendant testified that when he first saw it the vehicle with which he collided was approaching him in his traffic lane at a speed which he estimated to have been 75 miles per hour. He expressed the opinion that the automobile was then already within thirty or forty or fifty yards of him. He said he immediately drove his pick-up toward his right and completely off the pavement; that the approaching automobile momentarily regained its proper side

of the road; that when it veered to the right he turned back to his left and onto the pavement again; and that the approaching automobile then re-entered his traffic lane, and the collision occurred. Defendant's testimony in general was highly indefinite and it supplied nothing more than a basis on which to predicate a mere conjecture or speculation that he may possibly have been guilty of some one or more of the acts or omissions which plaintiff charged him with as constituting negligence. Such evidence does not require the submission of a case to a jury. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1; Phillips Petroleum Company v. West, Tex.Civ.App., 284 S.W.2d 196.

No reversible error having been presented, the judgment of the trial court is affirmed.