### MESA TRUCKING COMPANY et al., Appellants,

v.

### Reba KING et al., Appellees.

### No. 7317.

Court of Civil Appeals of Texas.

Amarillo.

March 9, 1964.

Rehearing Denied April 6, 1964.

Crenshaw, Dupree & Milam, Splawn & Maner, Lubbock, Rountree, Renner & Snell, Lamesa, for appellants.

New & Townes, Denver City, Evans, Pharr, Trout & Jones, Lubbock, for appellees.

CHAPMAN, Justice.

This opinion is announced in lieu of our opinion of February 3, 1964.

This is a common law damage suit growing out of a head-on collision between a Mack Truck-Tractor and trailer weighing 72,000 pounds loaded with grain and a panel truck containing automobile parts weighing eight to nine thousand pounds.

Reba King and her three minor children, surviving wife and children respectively of Ralph Eugene King, deceased driver of the panel truck killed in the collision and Jimmy Webb, owner of Webb Auto Supply, employer of King are appellees. Mesa Trucking Company, lessee of the Mack Truck, Truman O'Neil, d/b/a Lamesa Mack Sales, owner of the Mack Truck and Howard M. Linton, driver thereof are appellants.

The case was tried to a jury, which found Howard Linton guilty of failing to keep a proper lookout; of failing to keep his truck under proper control; of failing to yield at least one-half of the main traveled highway to King; of failing to turn the truck-tractor to the right in time to avoid the collision; and that he drove the truck to his left across the center lane of the highway.

The jury found each of the above acts constituted negligence on the part of Linton and a proximate cause of the collision.

The jury found King failed to keep a proper lookout and that such failure was a proximate cause of the collision. They acquitted him of failure to remain on his side of the highway. They also acquitted him of being under the influence of intoxicating liquors, a contention made by appellants. Upon a motion by appellees to disregard the jury's findings of failure of King to keep a proper lookout and that such failure was a proximate cause of the collision, the trial court sustained the motion and awarded judgment for appellees. It is from such judgment appeal is perfected to this court.

■ The first two points assert error of the court in sustaining the motion to disregard issues 22 and 23 concerning King's failure to keep a proper lookout, which was a proximate cause of the collision, and entering judgment for appellees.

In order to sustain the trial court's action in setting aside the jury finding of improper lookout and proximate cause based thereon, we must hold there was no probative evidence to support the two issues or the issue on proximate cause. Baumler v. Hazelwood, 162 Tex. 361, 347 S.W.2d 560.

The only living eyewitness to the collision was appellant Linton, the driver of the heavy truck. He testified there was nothing unusual in the manner in which the driver of the panel truck and he were approaching each other until they were within 70 or 75 to one hundred feet of each other and that he was driving between 40 and 45 miles per hour. We find no direct testimony other than that just stated as to the speed of the panel truck. However, the record shows Mr. King usually returned home to Lubbock between 7:30 and 8:30. His wife worked at a hospital at night and he was supposed to be home that evening to keep the children. The testimony shows he left Plains to go to Broncho to call on a new service station operator between 5:30 and 6:00 the afternoon before the collision that night and that the collision about six miles west of Plains occurred between 8:00 and 9:00 that night on his way from Broncho back to his home in Lubbock. The Deputy Sheriff, Olan Heath, testified it was about straightup nine o'clock p. m. when he was notified in Plains of the collision. There being no eyewitnesses to the collision other than the parties, someone had to observe the wreckage after it happened then drive into town and report it. Therefore, we believe it could be inferred from the record that the collision happened sometime between 8:15 and 8:45. Since he was between an hour and two hours late and since Mr. Linton testified there was nothing unusual in the manner of his approach, we believe the trial court could have impliedly found he was driving at least as fast as the big truck. We believe it fair to say that under the circumstances he ordinarily would be driving faster. If they were approaching each other at a speed of between 40 and 45 miles per hour and were between 75 and a hundred feet apart they would be approaching at 117.33 to 132 feet per second. Since Mr. Linton testified they were between 70 or 75 and one hundred feet of each other before anything unusual happened, there would have been less than a second for Mr. King to react and take evasive action in an attempt to escape the collision.

■ The courts have held in effect that time and distance are important matters to consider in passing on the question of setting aside lookout findings. Jaynes v. Lee, Tex.Civ.App., 306 S.W.2d 182 (N.W. H.) ; Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79 (first Supreme Court opinion) ; Continental Bus System v. Biggers, Tex.Civ.App., 322 S.W.2d 1 (N.R. E.). The last cited case was the last opinion of the Court of Civil Appeals in Biggers.

In the second opinion of the Supreme Court in the Biggers case, 157 Tex. 351, 303 S.W.2d 359, the majority said if it could agree with the premise that the

Ford entered the lane of the bus less than two seconds before the collision it might find justification for setting aside the jury's findings on failure of the bus driver to keep a proper lookout. In the first opinion in that case the majority said: "We think there can be no doubt that if the Ford crossed into the traffic lane in such a short time the bus driver could not put on his brakes, or slow his speed before the bus was on the Ford car, then the failure on the part of the bus driver to keep a proper lookout * * * could not possibly be a proximate cause of the collision." After the case was sent back to the Court of Civil Appeals that court in its second opinion which was N.R.E.'d by the Supreme Court said: "We adhere to our original holding that there is no evidence to show failure to keep a proper lookout was a proximate cause of the collision," this despite the fact that the time element in that case considered in the light most favorable to the verdict was more than three seconds from the time the Ford entered the lane of the bus before the collision. Biggers, supra, 303 S.W.2d 359, 366.

The only evidence in this case upon which a failure of the deceased driver to keep a proper lookout which was a proximate cause of the collision could be based is that of appellant Linton. His testimony is completely and irrevocably inconsistent with all the material physical facts. He testified the panel truck came over into his lane of traffic within a distance of between 70 or 75 feet and one hundred feet; that he (Linton) cut hard to the right with his truck-tractor; that his right front wheel was four to six feet off the right side of the pavement at the time of impact; and that he was then going in a northwestern direction on a west bound road and continued about the length of his truck and trailer before he stopped.

The physical facts show beyond question that the large truck-tractor turned over on its right side with its left wheels suspended in the air; that its right wheels on the pavement were about three feet from the center stripe and if righted its left wheels would be over four or five feet across the center stripe and into the south lane of traffic. The panel truck after impact was still over on its proper side of the highway, though crushed by the weight of the large truck. Mr. Linton testified the trucks first met bumper to bumper, that the panel truck kept on down the side of his truck hitting his driver wheels and then the bed of the trailer. These physical facts are proved without the testimony of the Deputy Sheriff, Olan Heath, who was the investigating officer at the scene a few moments following the collision. His testimony, though strenuously objected to was, we believe, admissible. That question will ·be considered fully in another point. He placed the point of impact on the south side of the center stripe with the panel truck going east and the large truck going west. He said the location of the grain on the highway and the debris resulting from the collision showed the large truck continued west about 54 feet and the panel truck east about 20 feet after the impact. The chassis, undercarriage, axle and wheels of the panel truck were all on the south, the deceased's proper side of the center stripe. Another witness testified the grain escaped from the front gate of the trailer and the testimony shows it was strewn from approximately the position placed by Mr. Heath as the point of impact to where the trailer turned over, the bulk of it naturally being to the right side of the trailer after it turned over on its right side.

█ It has been held that testimony which is contrary to undisputed physical facts will not raise an issue. Holly v. Bluebonnet Express Company, Tex.Civ.App., 275 S.W.2d 737 (N.R.E.); Talley Transfer Co. v. Cones, Tex.Civ.App., 216 S.W.2d 604 (N.R.E.). When appellant Linton was questioned on the witness stand about his theory of the collision as it related to the physical facts he frankly stated he could not explain his theory with such facts.

█ In a deceased pedestrian case involving a question of proper lookout our

Supreme Court in Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481, has held:

"The presumption is that the deceased exercised ordinary care for his own safety, and in order for respondents to be entitled to have it ruled that, as a matter of law he failed to do so, the burden rested upon them to overcome that presumption by competent evidence so conclusively that reasonable minds could not differ with respect thereto. The question must be approached from the viewpoint of the deceased. His lips are closed and we do not have the benefit of his version of the occurrence. There is not the slightest suggestion that he was bent on self-destruction, and the strongest of presumptions is that he was not."

That same presumption against self-destruction appears applicable in this case from the testimony of Mrs. King with respect to their family life and the close relationship between her husband and son.

Proximate cause is defined in the charge as " * * * that cause, which in a natural and continuous sequence, unbroken by any new and independent intervening cause, produces an event without which the event would not have occurred, and in order to be the proximate cause of an event, it must be reasonably foreseeable that such event, or some similar event is likely to result from such cause."

To say in this case that the collision would not have occurred except for the failure of King to keep a proper lookout we would have to disregard the presumption rule announced in Boaz v. White's Auto Stores, supra, and the only evidence in the record of *time* and distance because under the rules of the Biggers cases there simply was not sufficient time for King to react and employ evasive action to avoid the collision. (Emphasis added).

After all, the burden was on appellants to prove the deceased failed to keep a proper lookout which was a proximate cause

of the collision. In the "Motion By Plaintiffs to Disregard Certain Jury Findings" counsel for appellants states: "I think on the motion, we have got to assume, even though it is contrary to the testimony of the only witness to the accident, we have got to assume that the truck was on its wrong side of the road at the time of the collision. The jury so found."

We are not passing upon whether the law is or is not correctly stated in all respects in the quote or whether such statements bind appellants. We use it here because the motion for rehearing states we went out of the record when we made the observation in our original opinion. The quote is not included in the Transcript or Statement of Facts but is brought up to us in the record in the same manner as would an argument before a jury. For whatever it is worth it is in the record before us.

Regardless of the contention in appellants' motion for rehearing to the contrary, we still adhere to our original conclusion that Linton's testimony as to where the impact occurred on the highway, such as to show deceased's failure to keep a proper lookout which was a proximate cause of the collision, is completely and irrevocably contrary to all the material physical facts. For that reason and under the authorities above cited on the point, we believe his testimony in that regard does not constitute any probative evidence. At the best it constitutes no more than a scintilla of evidence.

Therefore, in applying the rules announced in the cited cases to the facts in the case at bar, considered in the most favorable light to appellants, we are compelled to hold that the trial court properly set aside the findings against appellees and that there is no probative evidence to show that failure on the part of Mr. King to keep a proper lookout was a proximate cause of the collision, even if it could be said, arguendo only, that the evidence showed a failure on his part to keep a proper lookout.

In their points three and four appellants raise the no evidence point to support the verdict of appellees. Not even considering the other findings against appellants, the issues answered against them with respect to Linton crossing to King's side of the road are sufficient grounds of negligence and proximate cause to support the judgment against them. The photographs of the physical facts taken before anything about the wreckage was moved and the testimony of the witness Biggs and Lowe constitute sufficient evidence to support the verdict. When the testimony of the investigating officer, Heath, is added it preponderates in favor of the judgment rendered. We believe what we have said in a discussion of the first two points supports this statement, so we shall not lengthen this opinion by further recitation of those facts.

The next point appellants assert is that the trial court erred to the prejudice of appellants in overruling their motion to instruct the jury not to consider for any purpose the testimony of the Deputy Sheriff, Olan Heath, as to the point of impact and the course the vehicles took after impact.

The statement of facts shows the trial court very carefully considered the objections made by appellants before ruling. He made the observation that all parties agreed there was an impact, then stated " * * * he will be permitted to testify as to the opinion, if he can properly predicate it, and if this man has an opinion as to the impact, I will let it come in for whatever it may be worth."

The officer then testified he had been a deputy sheriff in Yoakum County for eight years; had been in such work for twenty-five years; that his duties involved the patroling of highways and he had investigated hundreds of accidents thereon. He said in effect, from those years of training in the many accidents he had worked, that by determining the location of the physical evidence as he found it he could determine what happened. From the conditions at the scene, including the grain, debris, the location of the trucks before they were moved, three or four chipped out places about two inches deep on the highway on the south side of the center stripe and all other physical facts, he testified he could tell where the impact occurred; which direction each truck was moving; how far they proceeded; their direction after impact; and which side of the road the vehicles were on when the impact occurred. The court had that testimony before him and the numerous photographs, several of which were greatly enlarged, upon which to base his ruling.

The thoroughness with which the officer made his study, his diligence in marking the highway so he could observe it the next morning in the daylight, and the measurements he made, we believe gave him knowledge beyond that of an average layman and made it probable that his opinion would be of assistance to the trier of the facts.

It has been textually stated in Volume 66 A.L.R.2d 1057 that:

"In a growing number of jurisdictions the courts have held that skilled or expert opinion evidence as to the point of impact or collision is admissible in motor vehicle accident cases upon the ground that a skilled or expert witness can aid the jury in drawing correct inferences from raw and unsorted facts."

Also in Volume 2, McCormick and Ray, Texas Law of Evidence, Section 1401, Page 235, it is said:

"The burden of establishing his qualification naturally rests upon the party offering the alleged expert. Whether the person offered possesses the required qualification is a preliminary question to be determined by the trial judge and should not be left to the jury. In the decision of this question our courts have wisely held that the trial judge has a wide discretion not subject to review in the absence of clear abuse."

That same text in the same volume at page 220, Section 1395, states:

"Furthermore the controlling cases from the Texas Supreme Court do not support any general rule forbidding properly qualified witnesses from giving opinions upon facts which are the ultimate issues in the case. On the contrary it is believed that such opinions are receivable whenever they are likely to be of appreciable aid to the jury in arriving at the correct conclusion."

In Bolstad v. Egleson, Tex.Civ.App., 326 S.W.2d 506 (N.R.E.) the court held:

"It is for the Trial Court to determine if the proposed witness has had sufficient opportunity for observation and experience in line with the subject under inquiry to entitle him to give his opinion based upon evidence adduced. When the Trial Court, in the exercise of his sound discretion, has determined this matter, the appellate courts will not disturb that decision in the absence of an abuse of that discretion. Montgomery Ward & Co. v. Levy, Tex.Civ. App., 136 S.W.2d 663."

Therefore, under this record and the authorities cited we do not feel justified in saying the trial court abused his discretion in permitting the testimony of Olan Heath.

■ The last point urged, is that the trial court committed reversible error in not permitting defendants and cross plaintiffs to exercise six peremptory challenges each. The point is without merit.

Howard Linton, Truman O'Neil and Mesa Trucking Company all take the position that Ralph King caused the accident. There was not a question raised in the case but that Linton was the employee of Mesa Trucking Company. Their defenses were common. If the jury had found any issue supported by probative evidence that King

was guilty of negligence which was the proximate cause of the collision, Mesa would have been relieved of liability and Linton would have recovered. There were no fact issues to be determined between them.

In Smith v. El Paso & N. E. Ry. Co., Tex.Civ.App., 67 S.W.2d 362 (error dismissed) the court said:

"The statute (Rev.St.1925, art. 2148), in civil cases, expressly allows six peremptory challenges to 'each party.' Party does not mean person. Several defendants having identical interests in the suit constitute but one party. Interests are identical where the grounds of defense are common to all. There is no suggestion of antagonism of interest in the pleading or issues tendered between defendants."

Other authorities in support of the paragraph just quoted are Alaga v. Stubblefield, Tex.Civ.App., 174 S.W.2d 627 (N.W.H.); Glazier v. Roberts, Tex.Civ.App., 108 S.W. 2d 829 (N.W.H.); Witliff v. Spreen, 51 Tex.Civ.App. 544, 112 S.W. 98 (N.W.H.); Baldridge v. Klein, Tex.Civ.App., 56 S.W.2d 897.

Appellant Mesa Trucking Company in support of its claim of error under this point asserts that it wanted to challenge a juror Linton refused to challenge. No injury is shown from this fact because there is no possible way to determine how the juror which would have been selected by a challenge of the other juror would have voted on the issues.

Because of the importance of this case, particularly in the size of the verdict, we have given further careful study following appellants' vigorous motion for rehearing. We still adhere to our conclusion reached in our first opinion to the effect that the trial court properly disposed of the case.

Accordingly, the judgment of the trial court is affirmed.