Roger Dale **BRISTER** et al., Appellants,

v.

Earl Henry **LASITER**, d/b/a Grandfalls Butane Company, Appellee.

No. 6025.

Court of Civil Appeals of Texas.

El Paso.

July 30, 1969.

Rehearing Denied Sept. 10, 1969.

332

A. R. Archer, Jr., Monahans, for appellants.

Paul New, Denver City, for appellee.

## OPINION

WARD, Justice.

This was a suit filed by appellants Roger Dale Brister, W. R. Jenkins, Jr., Mabel Mosley, individually and as statutory beneficiary and common-law survivor of Garvin Ray Mosley, and Ruthie Mosley, also as statutory beneficiary of Garvin Ray Mosley, against Earl Henry Lasiter, doing business as Grandfalls Butane Company, growing out of an automobile-truck accident at an intersection on U. S. Highway 80 and the Monahans Loop Road on the 21st day of November, 1967. In the accident the driver of the automobile, a Chevy II, Garvin Ray Mosley, was killed and the plaintiffs, Roger Dale Brister and W. R. Jenkins, were seriously injured. Trial was to a jury. All acts of primary negligence were found in favor of the defendant truck driver. Concerning the defendant, the jury found that he did not fail to keep a proper lookout; that he did not fail to timely apply his brakes; that he did not fail to yield the right-of-way; that he did not fail to observe the stop sign at the intersection. All issues submitted to the jury on contributory negligence and the related proximate cause were found against the respective plaintiffs below, who are the appellants herein. The deceased driver of the automobile, Garvin Ray Mosley, was found guilty of negligence in that he failed to keep a proper lookout for the truck; that he failed to timely apply his brakes; that he failed to observe the flashing light and reduce his speed on approaching the intersection; that he drove his vehicle at an excessive rate of speed under the circumstances; and that he failed to turn his vehicle to the left in time to avoid a collision. As to the two passengers in the automobile, Roger Dale Brister and W. R. Jenkins, the jury found that they each failed to keep a proper lookout for the truck of the defendant. The jury further found that the collision was not an unavoidable accident. In view of the above stated findings by the jury, judgment was entered by the trial court for the defendant truck driver.

■ Appellants' first point asserts the absence of evidence to support the jury's finding that the appellee truck driver did not fail to keep a proper lookout, and by appropriate assignments as to the same issue, that the evidence is insufficient to support the finding, and again, against the great weight and preponderance of the evidence. Of course we have to consider and dispose of the "no evidence" point before passing upon the "insufficiency of evidence", and in considering the former, first it will be our consideration to examine only the evidence and the inferences favorable to the finding and disregard all evidence and inferences to the contrary. Calvert, "'No Evidence' and 'Insufficient Evidence' Points of Error", 38 Texas Law Review, 361.

The undisputed facts are that the collision occurred at about 7:00 o'clock p. m., after dark, at the intersection of U. S. Highway 80 and Monahans Loop Road. U. S. 80 runs east and west, and the Loop Road north and south. Parallel to U. S. 80 are the main T. & P. railroad tracks. The Loop Road is two lanes and U. S. 80 contains four traveling lanes, each 12 feet wide with two on the north for westbound traffic, and two on the south for east-bound traffic. There is a three-foot wide yellow center stripe dividing east and west-bound traffic. Along the north side of U. S. 80 there is an 18-foot paved shoulder, and along the south side a 32-foot paved shoulder. The appellee truck driver approached the intersection. driving south. As he approached, there were two stop signs, one on the north side of the railroad tracks for the trains, and one at the intersection of the two roads for the control of highway traffic. Also, above the intersection was in operation a system of flashing lights, red facing the traffic from the north, and yellow facing the traffic in each direction on U. S. 80. While the intersection is in the city limits of Monahans, there is a

speed limit sign facing west of 60 miles per hour, some 200 feet to the west of the intersection. The intersection was well lighted and the night was clear and dry.

The appellee, being in the butane business, testified that he had a load of butane on his truck; his clearance lights, cab lights, and headlights were on; that as he was going south on the Monahans Loop Road that he first stopped on the north side of the railroad tracks, from which point he moved forward and again stopped his truck in observance to the stop sign and the two blinking red lights that were facing him; that he had passed the intersection hundreds of times. That he then looked to his left and right. His vision was not impaired, and as he looked in both directions he saw car lights in the distance, and he started across the intersection. When he was about middle of the four-lane road, he looked to his left and right again, and when he looked to his right he saw some lights that appeared to be about 400 to 600 feet away. He continued on across the intersection and the approaching lights belonging to the appellants' car struck the right rear of his truck when about four feet of the rear of the truck was left in the south lane of traffic. That it was not the distance he had to travel, but the speed of the approaching vehicle that caused the collision. That at the time of the impact the truck was traveling at ten to twelve miles per hour. The total load of the butane tanks that he was carrying was around some 16,000 pounds, and the tanks were knocked off the truck and came to rest 20 to 40 feet on east of the impact area. The tanks were fastened to the truck with eight steel bolts and a bracket welded to the tanks. All the investigating officers were called on behalf of the appellee and testified that the Chevy II laid down 154 feet of skid marks, all in the south lane of Highway 80 and all going in a straight line to the point of impact, which was located two feet east into the intersection and three feet seven inches south of the center of the east-bound traffic. The Chevy II came to rest nine feet east after impact, and the

tanks were knocked some twenty feet southeast from that point. Officer Jodie Fore, Texas Highway Patrolman, testified that in his opinion the Chevy II, at the time it struck the truck, was traveling between 40 to 45 miles per hour, and estimated the speed of the Chevy II before it started applying its brakes to be between 90 and 95 miles per hour. Dr. William H. Tonn, Jr., a consulting engineer engaged in accident-analysis work, saw and examined the Chevy II and the truck, the photographs and the scene, and stated that in his opinion before the brakes on the Chevy II were applied, it would have been going in excess of 73 miles an hour, and in his opinion at the time of the impact the Chevy II was going in excess of 50 miles an hour. The front of the Chevy II was completely demolished, and he demonstrated that damage came from the energy of the car running straight into the rear side of the heavy truck; that the forward motion of the Chevy II for some nine feet after the impact, the throwing off of the heavy tanks, all indicated even more speed.

Other than the appellee, there was no eye-witness to the accident, the driver of the Chevy II having been killed, and the passenger in the front seat, Roger Dale Brister, facing to the rear talking to the rear seat passenger, W. R. Jenkins who, in turn, had no recollection of the events immediately preceding the accident.

■ As we view the matter, there is no difficulty in concluding that there was considerable evidence of probative force to support the jury's finding that the truck driver did not fail to keep a proper lookout. Primarily, it is not a question of lookout; it was a matter of misjudging the speed of the Chevy II as it came into the intersection controlled as to it by flashing yellow lights.

■ Every person proceeding along or across a public street is under the duty at all times to maintain a proper lookout for his own safety, and may not proceed blindly and in disregard of danger that might

reasonably be anticipated to exist. De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95. Admittedly, it is the duty of a driver about to enter a favored street not only to look, but to observe in a careful and intelligent manner the traffic and general situation at and in the vicinity of the intersection, including the speed and proximity of vehicles approaching from either direction. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273. But the mere fact that an accident happened is not evidence of failure to keep a proper lookout. We think it is established under the law of this state that when the appellee looked in both directions before entering the intersection and looked again in both directions when he approached the middle stripe and saw the lights, he certainly exercised some care for his own safety and that of others. He was driving slowly at the time and had only to clear 24 feet of east-bound lanes of traffic when he started into the east-bound lane. At that time the lights of the Chevy II appeared to be 400 to 600 feet away. Facing the Chevy II were the yellow caution lights. From his viewpoint when he drove on, it did not appear that the Chevy II was approaching so closely as to constitute an immediate hazard. Considering only the evidence favorable to the finding, we conclude that the appellants' contention that there was no evidence to support the jury's finding that the truck driver did not fail to keep a proper lookout is without merit.

■ As to the insufficiency of evidence points on lookout, the appellants have grouped these points, with one to the effect that the jury's finding that the truck driver did not fail to yield the right of way was against the great weight and preponderance of the evidence. In passing on these points we will consider all of the evidence in the record. In re: King's Estate, 150 Tex. 662, 244 S.W.2d 660. In addition to the testimony heretofore referred to, the appellants did produce testimony that the point of impact was nearer to the middle of the highway; that the tanks on the truck were not thrown as far as referred to; that

there was not too much of a jar to the truck or any sideward motion from the impact with the Chevy II, and mainly that the speed of the Chevy II either at the time of the impact or prior to the application of its brakes was not near as great as already stated. Mr. A. O. Pipkin, called by the appellants on rebuttal, testified that in his opinion the impact speed was not over 15 miles an hour and that the damage to the Chevy II was not caused so much from speed as from the light car hitting a solid object. A police officer, called by the appellee, testified to admissions made by the truck driver that he never saw the Chevy II as his mirror blocked his view. This admission was denied by the truck driver.

■ Having reviewed the entire record and having considered not only the evidence and inferences therefrom supporting the findings, but also all of the evidence and inferences opposed thereto, we conclude that the findings on the issues as to the truck driver's lookout and his right of way are amply supported by sufficient evidence and that the same are not against the great weight and preponderance of the evidence. Article 6701d, Sec. 73(a) and (b) applies at an intersection where a stop sign is erected, and Sec. 35 of the same Article applies likewise to the intersection where the flashing red and yellow signal lights are used. Surely, even when the truck driver was approaching the middle of the highway, it did not appear that the Chevy II was approaching so closely as to constitute an immediate hazard, and it seemed that he could proceed. Surely, with the Chevy II facing the caution signal, it would proceed through the intersection only with caution. As stated in Lynch v. Ricketts, supra, that in a case of this character, standards of ordinary care such as the direction and extent of the observation which should be made at any particular time cannot be fixed with any degree of certainty, but must be left in large measure to the tryer of facts.

The appellants rely mainly on cases such as Rollin v. Condra Funeral Home, Tex.

Civ.App., 321 S.W.2d 108, the facts being reported in 309 S.W.2d 940; Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277; Causey v. Newsom Truck Lines, Inc., Tex.Civ.App., 362 S.W.2d 210 (n. w. h.); and Sonnier v. Ramsey, Tex.Civ.App., 424 S.W.2d 684. We have no quarrel with such cases, but we do not feel that the controlling facts there control our present case, although each is an intersection case where the court reversed and remanded for a new trial as a result of jury issues absolving the driver on the inferior street of responsibility. In each case the speeds are approximately the same. In the Rollin case, the driver on the favored street admittedly was already in the intersection. The driver on the inferior street in the Causey case admitted he was 21 feet from the intersection before he saw the car on the right where he could have seen the car lights 100 feet before entering it; and as said in the Sonnier case: "The facts in the instant case are unusual in that the truck driver clearly and repeatedly admitted that he looked neither to his right nor his left before entering the intersection." After examining all the evidence, we overrule appellants' second group of points.

■ The next group of "insufficiency of evidence points" relates to the jury findings that the truck driver did not fail to observe the stop sign and signal light at the intersection and did not fail to timely apply his brakes. Here, the appellants rely mainly on the physical facts at the scene, as was done in the Rollin case, supra, and in Mesa Trucking Co. v. King, Tex.Civ.App., 376 S.W.2d 863 (n. r. e). The appellants point out the fact that the truck driver testified he did not apply his brakes after the impact and rolled on straight for some 150 feet; that the truck's rear axle and housing were broken, a tire and a wheel were warped and broken; that the truck was not knocked eastward from the force of the impact; that no side skid marks of the truck were observed at the point of impact from the force of the collision; that appellants' witness, Mr. Pipkin, gave his opinion that with

the Chevy II going 40 miles an hour and weighing 3500 pounds striking the truck, weighing a total of 22,000 pounds, that if the truck were only going 10 to 12 miles an hour, the impact would tend to spin the truck around to its side; that tests proved that if the truck stopped at the stop sign, and loaded as it was, it was a physical impossibility for it to be traveling at more than 10 or 12 miles an hour at the point of impact some 80 feet away; that therefore the truck did not stop, and at the point of impact was going much faster than the 10 or 12 miles an hour, so that its own force and velocity would account for no side skid marks at the point of impact and for the fact that it rolled on down the road 150 feet. However, the truck driver testified that he purposely drove the truck on down to that point to clear the truck, and was afraid of an explosion, he not knowing that the butane tanks had been knocked off. It was undisputed that the Chevy II went past the point of impact some nine feet, and that the officers testified only that they did not see any side skid marks—one, that he could have overlooked them; and at a speed of 10 to 12 miles an hour, in one-half a second the truck would have cleared the intersection. We do not have a situation here where the testimony of the truck driver is contrary to undisputed physical facts, such as found in the Rollin case, supra, and in Mesa Trucking Co. v. King, supra. Here the jury, having all the physical facts before it, absolved the truck driver of any blame, particularly where he was almost out the south lane of traffic before the Chevy II even entered the intersection. With conflicts in the testimony, the jury must have felt that the truck had stopped at the stop sign and was going only 10 or 12 miles an hour at the time of impact.

■■ Opinion evidence does not establish any material fact as a matter of law. It is but evidentiary, and is not binding upon the tryer of facts. The mere qualification of a witness as an expert does not cut off the fact finder from exercising considerable judgment of his own about how

far the witness' opinions are to be relied on. McIlroy v. Wagley, Tex.Civ.App., 437 S.W.2d 5 (err. ref., n. r. e.). There, the court, in a case similar to our own, also stated the following:

"In applying the test of the ordinarily prudent person given in the court's instruction to all of the evidence in the record, the jury could very well reach the view that when Brown eased up to the intersection and, upon looking to his right, saw no cars approaching, he would reasonably have concluded, as an ordinarily prudent person acting with ordinary care, that he could pass the intersection without danger of collision. The jury was justified from the evidence in finding, not only that Brown did not fail to yield the right-of-way, but that appellant, who obviously entered the intersection after the truck was well within it, did fail to yield, and that such failure was negligence, and a proximate cause of the collision. Such answers find support, legally and factually, in the evidence."

■ The evidence we have already summarized and discussed also applies to appellants' point of "no evidence" and "insufficiency of evidence" as to the driver of the Chevy II in regard to his various negligent acts and the related proximate cause issues. Having considered all of the evidence to be legally and factually sufficient to support the jury's findings on these points, they are all overruled.

■ As to the two passengers in the automobile, W. R. Jenkins and Roger Dale Brister, appellants assign as error that there was no evidence to support the findings that they failed to keep a proper lookout, insufficient evidence to submit the special issues on their lookout and their proximate cause, that there was no duty on the part of such parties to keep a lookout, and that the submission of the issues amounted to a comment on the weight of the evidence. Appellants present only the question "no evidence" and do not assign that

such findings of the jury against these parties were against the great weight and preponderance of the evidence. Therefore we will consider only the evidence most favorable to support such submission and disregard any evidence contrary thereto. The driver of the Chevy II had just arrived in Monahans and had never been in the town before. Jenkins was riding in the back seat and Brister was in the front seat of the Chevy II, turned sideways and talking to Jenkins. Both Jenkins and Brister resided in Monahans and were familiar with the town. They were all going to get a cup of coffee and both were directing Mosley, the driver. Both were familiar with the intersection in question and the course that would be taken. The car was being driven in the city limits at an excessive speed toward the intersection with which they were both familiar, into a flashing amber light under circumstances where they were required to proceed with caution. This evidence required the court to submit the issues. The general rule relating to the circumstances that a passenger is charged with keeping a proper lookout for his own safety is quoted from Dudley v. Whatley, Tex.Civ.App., 400 S.W.2d 773 (err. ref., n. r. e.):

"Ordinarily a passenger, not being in charge of the operation of the automobile, is not required constantly to keep a lookout. He may rely on the driver to keep watch unless he knows from past experience or from the manner in which the car is being driven on the particular trip, that the driver is likely to be inattentive or careless. In addition if the passenger knows that a particular point there will be a peculiar danger, which he has no reason to believe that the driver, if unaided, will perceive, he may be guilty of negligence, if he does not keep himself in a position to call the danger to the attention of the driver."

A passenger is required to call the attention of the driver to his excessive speed only when the speed is so great that a reasonable

man would realize its excessive character. Under very different circumstances the Supreme Court, in Dallas Railway & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379, held fact issues were raised on failure to caution the driver. The points relating to this matter in the manner presented are overruled. Even if these points could be sustained, these appellants could not recover, because the jury did not find the appellee responsible for their injuries.

 There is next raised the question that the court erred in allowing the highway patrolman to testify that prior to the accident the Chevy II was traveling at 90 to 95 miles an hour. The officer had attended the Texas Highway Department school, estimated he had investigated about 100 accidents a year for the past seven years, and qualified on his ability to estimate speed from skid marks, and testified that in his opinion, at the time of the impact, the Chevy II was traveling at between 40 to 45 miles an hour. Dr. Tonn, being fully qualified, testified, without objection, that the Chevy II at the time of impact was traveling at a speed in excess of 50 miles an hour to have done the damage at the scene. He was fully qualified as giving his opinion of speed based on impact damage and skid marks. We feel, viewed in this manner, that the testimony of officer Fore was cumulative to the testimony of Dr. Tonn, which was admitted without objection, and that this court should not reverse for any possible erroneous ruling on the admissibilty of the officer's testimony. The appellants practically had officer Fore admit, on cross-examination, that based on his own Texas Highway Department charts, the Chevy II was only going at some 67 miles an hour before application of brakes. Dr. Tonn estimated such speed at in excess of 73 miles an hour. Again, in view of the other findings in regard to no negligence on the part of the truck driver, we feel that any error was harmless. Billingsley v. Southern Pacific Company, Tex.Civ. App., 400 S.W.2d 789; Beynon v. Cutberth,

Tex.Civ.App., 390 S.W.2d 352; Texas Rules of Civil Procedure, Rule 434.

Having considered all of appellants' points of error, they are overruled, and the judgment of the trial court is affirmed.