**Gordon J. ADAMS, Connie Geiss, et al., Appellants,**

**v.**

**Duane A. SMITH, Administrator of the Estate of Este Lee Smith, Deceased, Appellee.**

**No. 8242.**

Court of Civil Appeals of Texas, Amarillo.

April 3, 1972.

Rehearing Denied May. 1, 1972.

Kolander, Templeton & Hamilton, Robert L. Templeton, Amarillo, for appellants.

Culton, Morgan, Britain & White, Maston C. Courtney, Amarillo, for appellee.

ELLIS, Chief Justice.

This is an appeal from a judgment rendered in an automobile collision case that the plaintiffs-appellants take nothing

in their respective actions for (1) wrongful death and (2) personal injury against the defendant-appellee. Affirmed.

The collision occurred at about 4:45 o'clock in the afternoon of July 1, 1968, on U.S. Highway 87–287, approximately 14½ miles north of Amarillo, Texas, and about 1½ or 2 miles north of the Canadian River Bridge. This was a paved north-south highway with 3 lanes from the Canadian River Bridge to a point some distance north of the scene of the accident. The two easterly lanes were designated for northbound traffic, while the most westerly of the 3 lanes was provided for southbound traffic. A painted double yellow stripe served to separate the two northbound lanes from the southbound lane. The terrain in the general area lying north of the Canadian River is characterized by a series of small rolling hills. Two automobiles were involved in the collision, a southbound Chevrolet, driven by Mrs. Melinda Ewing, and a northbound Cadillac, driven by Mrs. Este Lee Smith. Two persons were in the Cadillac and six persons were in the Chevrolet. It was raining and the highway was slick. The automobiles collided on the wet highway with great force, and of the eight persons in the two automobiles, all were killed in the collision except one, Connie Geiss, a minor child, who was a passenger in the Chevrolet. The impact of the collision was of such magnitude that the Chevrolet automobile was completely severed into two pieces, leaving the front half of the wreckage near the Cadillac and the rear half some 30 or 40 feet away near the center portion of the highway. Suit was brought against the Estate of Mrs. Este Lee Smith, the deceased driver of the Cadillac, on behalf of Connie Geiss, a minor, and by Gordon J. Adams, the surviving husband of Mrs. Elda N. Adams, one of the passengers who was killed while riding in the Chevrolet at the time of the collision.

Various acts of negligence on the part of the deceased driver of the Cadillac were alleged by the plaintiffs. There were four witnesses whose testimony was significant in this case. These included one eyewitness, James M. White, and three expert witnesses, Dr. Raymond M. Meyers, a physics professor at Texas Tech University, Glenn Clements, a Texas State Highway Patrolman and Carl T. Abrahamson, Traffic Engineer for the City of Amarillo, Texas. The trial was before a jury. The jury found no liability against the driver of the Cadillac and found that the failure of the driver of the Chevrolet to keep her vehicle within the portion of the roadway provided for southbound traffic was the sole proximate cause of the collision in question. Judgment was entered that plaintiffs take nothing by their suit, and from such judgment this appeal has been brought.

The appellants have predicated their appeal upon eleven points of error, and the appellee has responded with five counterpoints. The appellants' points of error are grouped into three categories in which they contend that the court erred in (1) admitting opinion testimony of Texas Highway Patrolman, Glenn Clements, concerning the speed of the Cadillac automobile; (2) admitting opinion testimony of Carl T. Abrahamson concerning the speed of the Cadillac automobile; and (3) refusing to submit appellants' requested special issues regarding specific alleged acts of negligence on the part of the driver of the Cadillac automobile.

The appellants called two of the above named witnesses, James M. White, the sole surviving eyewitness to the collision, and Dr. Raymond W. Meyers, the physics professor.

The significant portions of Mr. White's testimony are hereinafter set out. He was travelling in a southerly direction in a truck some distance behind the Chevrolet automobile when the collision occurred. The Chevrolet had passed him a short time before the collision. He testified that the Chevrolet automobile went into a "side ways skid" when it was travelling about 55 miles per hour. He further stated that the skid "started at the bottom of the hill going up,

and stayed in it all of the way up; not a real radical angle." His testimony was that the front end of the Chevrolet did not make a complete spin before it was hit, and during the greater portion of the skid, the Chevrolet was facing southeasterly and veering over into the other lanes. He estimated that the Chevrolet travelled in the skidding position going gradually up the hill in a southeasterly direction for a distance of about 500 feet to the point of collision with the Cadillac. He testified that the collision occurred in the easternmost lane of the northbound traffic lanes just after the Cadillac topped the hill as it came from the south. Upon being asked how long he had to observe the Cadillac after it came into view over the hill and before the automobiles collided, he replied that it was the length of time it took him to utter the spontaneous statement made to the other occupant of his vehicle (Mr. Garrett Jewett who was deceased at the time of the trial), "My God, they're going to hit." Mr. White further testified that when the two automobiles collided "both of them went straight up in the air, and came directly back down. . . ." Also, he stated that the Cadillac was in the center of the far east lane and he didn't see it change directions in any way. He was unable to tell whether the Cadillac reduced its speed from the time he first saw it until the collision. He was unable to tell how fast either automobile was travelling at the time of the collision. He stated that the Chevrolet left no skid marks, and he was unable to say whether the speed of the Chevrolet was reduced by the skid up the side of the hill. Also, he noticed no skid marks, "gouge" marks or smudge marks on the pavement. Further, he testified that neither vehicle went careening off after the impact.

 Since Mr. White was unable to determine the speed of either vehicle at the time of the collision, expert witnesses were called by the respective parties. A person is regarded as an expert witness when the subject of inquiry is one of science or skill about which the purported expert, by reason of his particular training, study and experience has skill and knowledge about such subject under investigation which jurors generally would not be presumed to possess. International & G. N. R. Co. v. Mills, 34 Tex.Civ.App. 127, 78 S.W. 11 (1903, writ ref'd). Since such a witness would be expected to be more knowledgeable than the average layman in the particular area of inquiry involved, it is anticipated that such person's opinion should be of some assistance to the trier of the facts. Mesa Trucking Company v. King, 376 S.W.2d 863 (Tex. Civ.App.—Amarillo 1964, writ ref'd n. r. e.). It is within the discretion of the trial court to determine whether a particular witness is qualified to testify as an expert, and it must be shown that such discretion has been abused before the trial court's determination will be disturbed on appeal. Mesa Trucking Company v. King, supra; Bolstad v. Egleson, 326 S.W.2d 506 (Tex.Civ.App.— Houston 1959, writ ref'd n. r. e.); Kettle v. Smircich, 415 S.W.2d 935 (Tex.Civ.App. —Corpus Christi 1967, no writ), Also, it is well settled that "opinion testimony does not establish any material fact as a matter of law." Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345, 346. It is but evidentiary and not binding upon the trier of the facts. Broussard v. Moon, 431 S.W.2d 534 (Tex.Sup.1968); McIlroy v. Wagley, 437 S.W.2d 5 (Tex.Civ.App.— Corpus Christi 1968, writ ref'd n. r. e.); Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62 (1945).

The appellants called as an expert witness Dr. Raymond W. Meyers, a physics professor from Texas Tech University. In his professional career and background he had considerable experience in reconstructing accidents, including automobile collisions. Since there were no skid marks and the location of the point of impact of the vehicles was not established, he sought to determine the amount of force required to cause the physical damage to the two automobiles. In short, Dr. Meyers estimated it would take a combined speed of 110 miles per hour to create such a force. Also,

he concluded that the only way the Chevrolet automobile, if it were travelling 55 miles per hour before it went into the skid, could have skidded 500 feet on the wet pavement was by a hydroplaning effect. On this basis, he estimated that even with the hydroplaning effect, the Chevrolet automobile would have been travelling at a very low rate of speed at the time of the impact, and that the greater portion of the "combined" 110 miles per hour should be assigned to the speed of the Cadillac. The above conclusion was made without consideration of any assumption (based upon the testimony of the eyewitness) that upon collision, the two vehicles went straight up in the air and then came right back down. On cross examination, Dr. Meyers admitted that if he were to assume that when the two vehicles collided, they went straight up into the air and back down, if the vehicles weighed approximately the same, they would be travelling at about the same rate of speed at the time of the impact.

One of the witnesses called by the appellee was Glenn Clements, a Texas State Highway Patrolman who had four years experience in the investigation and reconstruction of accidents. He had personally assisted in the investigation at the site of the accident shortly after the collision. At the time of the collision he had graduated from the DPS Academy and had been with the Texas State Highway Patrol for approximately one year. He testified that during the course of his four years experience he had investigated many automobile accidents.

The record discloses that it was undisputed that on the occasion in question, the road was wet and slick, two lanes of the highway were concrete, and the third and most easterly was constructed of asphalt. The terrain was hilly. Also, the tires of the Chevrolet were badly worn. The northbound vehicle was a 1957 Cadillac and the southbound vehicle was a 1966 Chevrolet. Officer Clements stated that he knew the approximate weights of the respective automobiles, the Cadillac weighing about 4800 pounds and the Chevrolet about 3800 pounds. The foregoing matters together with the above mentioned testimony of Mr. White, the eyewitness who was called by the appellants, were admitted into evidence and constituted the elements of the hypothetical question asked of Officer Clements as a basis for his opinion as to relative speed of the two vehicles at the time of the collision. A considerable portion of the facts contained in the hypothetical question was derived from the testimony of Mr. White based upon his personal observation. Mr. White's version as to what he personally saw at the instant of the collision is demonstrated by the following uncontradicted testimony which he gave during the cross examination by counsel for the appellee:

"Q What happened to the vehicles when they hit?

"A Looked like they hit just like that and went in the air and come back down. . . .

"Q I know this is something you don't want to go into, but I want you to tell what happened when those cars came together, describe it as best you can.

"A The cars hit, both of them went straight up in the air and came directly back down.

"Q You have testified when these vehicles came together that they just seemed to stop, go up in the air and come right straight back down?

"A That is what I observed, yes.

"Q Does that fairly well describe what you saw?

"A Yes.

"Q Neither vehicle went careening off?

"A No, not a . . . not a thing . . . like that."

Officer Clements gave an opinion regarding the relative speed of the two vehicles at

the time of the collision. He testified that, in his opinion, upon impact the two automobiles were travelling at approximately the same speed. He stated that his opinion expressed was based upon all the training and experience he had acquired during his entire period of service with the Department of Public Safety, his personal observations and investigation made shortly after the collision, and upon the factual matters detailed to him in the hypothetical question posed by appellee's attorney.

■ Appellants have cited various cases holding that a police officer cannot base his opinion or estimate as to the speed of a vehicle entirely upon his observation of the impact damage to the vehicles. Also, certain cases hold that a properly qualified police officer can base an estimate of speed on skid marks. Thus, under the cases cited by appellants, an officer, if shown to be qualified may properly base an estimate of speed upon skid marks, but such an opinion on speed cannot be based solely upon physical or impact damage to the automobile. Such cases, however, do not establish that an officer can only base an opinion as to speed on skid marks.

■ In the instant case, the hypothetical question was not limited to impact damage, and the witness testified only as to relative speed of the two vehicles and not as to specific speed in miles per hour. The important physical facts surrounding this accident were the type and weights of the vehicles involved, the speed of the Chevrolet at the beginning of the skid, and the fact that since the automobiles appeared to the eyewitness to go straight up and come back down again without careening off, indicating that upon collision their momentum was canceled out. Upon these facts, Officer Clements expressed the logical opinion that under such circumstances the Chevrolet and Cadillac were travelling at approximately the same speed. Also, it is observed that in this case the testimony of Officer Clements was cumulative and corroborative of other testimony to the

same effect admitted into evidence, and even if his opinion were not admissible, it would at most be deemed as harmless error. The jury could well have come to the same conclusion on the matters in issue from the testimony of persons other than Officer Clements. See Brister v. Lasiter, 444 S. W.2d 331 (Tex.Civ.App.—El Paso 1969, writ ref'd n. r. e.); Beynon v. Cutberth, 390 S.W.2d 352 (Tex.Civ.App.—Eastland 1965, no writ).

It is also noted that Dr. Raymond W. Meyers, the physics professor who was called as appellants' expert witness, admitted on cross examination, in response to substantially the same hypothetical question which had been directed to Officer Clements, that assuming the facts related by the eyewitness, Mr. White, with respect to the reaction of the two automobiles upon collision, the two automobiles were going at approximately the same speed. Both Dr. Meyers and Mr. White were appellants' witnesses and appellants are bound by their testimony. Polasek v. Quinius, 438 S.W. 2d 828 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e.).

As previously mentioned, Dr. Meyers had sought to arrive at the speed of the Cadillac vehicle by making a determination of the total amount of force required to cause the physical damage to the two automobiles and determined that it would require a combined speed of 110 miles per hour and had assigned the greater portion of such combined speed to the Cadillac. However, when he was given the benefit of the observation of the eyewitness regarding the collision, he not only expressed the opinion that the Cadillac and Chevrolet were travelling at approximately the same speed, but if the Cadillac was the heavier of the two vehicles, the Chevrolet would have been going faster than the Cadillac.

Appellants contend that the opinion of Officer Clements was based upon the opinion of the eyewitness. With this we cannot agree for an analysis of the vital elements of the hypothetical questions posed were

in the record as a part of the uncontroverted factual evidence in the case. For example, the eyewitness's testimony as to the reaction of the two cars when they came together was not an expression of opinion but a factual statement of matters he observed. Further, Mr. White gave no "opinion" as to the relative speed of the vehicles at the time of the collision.

Appellant further urges that the testimony of Officer Clements is an invasion of the province of the jury. There is no prohibition against properly qualified witnesses giving opinions upon facts which go to the determination of the ultimate issues in the case. Federal Underwriters Exchange v. Cost, 132 Tex. 299, 123 S.W. 2d 332 (Tex.Com.App.1938); Houston & T. C. R. Co. v. Roberts, 101 Tex. 418, 108 S. W. 808 (1908). Also, appellants insist that such opinion demonstrated no special skill to conclude that two automobiles so stopping after a head-on collision would be going at about the same speed. The opinion given by Officer Clements in connection with the relative speed of the automobiles appears to deal with a subject of inquiry involving science and skill, which by reason of his background, training and experience, and his personal investigation of the particular accident involved, he should have more skill and knowledge in this area of inquiry than the jury, and it is clearly probable that such opinion should be of assistance to the jury as the trier of the facts. International & G. N. R. Co. v. Mills, supra; Mesa Trucking Company v. King, supra. We have concluded, therefore, that the court did not abuse its discretion in admitting the officer's testimony with respect to the relative speed of the automobiles, and that appellants' objections regarding this testimony go to its weight rather than its admissibility. Appellants' points of error Nos. 1 and 2 are overruled.

The appellants challenge the admissibility of the testimony of Carl T. Abrahamson, a witness called by the appellee, concerning the speed of the Cadillac vehicle. Abra-hamson is the Traffic Engineer for the City of Amarillo. The evidence shows that he was experienced in investigating and reconstructing accidents and had previously testified in court in many cases of this nature. He had a degree in civil engineering, including courses in mathematics and physics. As a part of his employment with the City of Amarillo, he frequently views the scenes of automobile accidents to seek to reconstruct how they occurred. Also, in connection with such duties, he forms opinions concerning the speed of automobiles involved in accidents. He testified that in forming such opinions, he uses mathematics and the laws of physics, and considers the damages done, conditions of the roadway, geometrics of the roadway and weather conditions. In arriving at his opinion as to the speed of the Cadillac automobile involved in this case, the record discloses that he considered the road conditions, various photographs, including those of the vehicles after the collision, the terrain of the area, the law of conservation of momentum, weather conditions, the direction of travel and lanes of travel of each of the vehicles involved, weights of the vehicles and occupants thereof, the skidding of the Chevrolet and the absence of the skid marks, speed of the Chevrolet before it started skidding, condition of the tires of the Chevrolet, the composition of the roadway, length of time the Cadillac was in view at the crest of the hill, the lane in which the collision occurred, and the manner in which the collision occurred. Based upon his experience, knowledge of the laws of physics, his study of the accident, and the hypothetical question containing all of the elements above set out, he expressed an opinion that the Cadillac automobile was travelling about 55 miles per hour at the time of the collision.

After reviewing the record with respect to Abrahamson's qualifications and experience, it is our opinion that he was qualified as an expert on accident reconstruction, and that his opinion on speed was admissible into evidence. Also, the authorities rec-

ognize that it was within the discretion of the trial court to determine whether Abrahamson possessed the required qualifications in line with the subject under inquiry to entitle him to give his opinion upon the evidence adduced. Bolstad v. Egleson, supra; Kettle v. Smircich, supra. Appellants sought to discount the competency of Abrahamson's testimony on the basis that during a portion of the cross-examination he made reference to a chart. It has been held that when a witness has been shown to qualify as an expert, he may properly use charts and tables, along with other appropriate data in giving his opinion. Ryan v. Payne, 446 S.W.2d 273 (Ky.Ct. of App., 1969). It is further noted that Abrahamson's opinion is consistent with and cumulative of the testimony of Dr. Meyers, appellants' expert witness, to the effect that if, under the circumstances detailed, the two automobiles came together, went straight up and came down without careening, they would be travelling at approximately the same speed.

■ Appellants contend that Abrahamson was not qualified to express an opinion with the facts at hand, and they question the accuracy of the basis for his opinion. We have carefully reviewed the record regarding his qualifications and the various matters submitted to him for consideration as a basis for the expression of an opinion. We have concluded that his opinion was based upon his training, background, experience and the study made of that particular accident, and that the hypothetical question submitted contained substantially all of the essential elements and proper assumptions concerning this particular occurrence. It has been held that the hypothetical question is sufficient if it imports substantially what the evidence shows. See 62 Tex.Jur.2d, Witnesses, § 166 at 46. We find no abuse of discretion in the admission of Abrahamson's testimony concerning the speed of the Cadillac automobile and that appellants' objections (just as was the case regarding Officer Clements' testimony) goes to the weight to be given to it by the jury rather than to its admissibility. For the reasons above stated, we overrule appellants' points of error Nos. 3 and 4 directed to Abrahamson's opinion testimony regarding the speed of the Cadillac automobile.

■ Appellants' remaining points of error (Nos. 5 through 11) relate to the court's failure to submit certain negligence issues requested by the plaintiffs. These points involve the question as to existence of evidence to support the submission of the respective requested issues. Points of error Nos. 5, 6, 7, 8 and 9 relate to lane of traffic in which Mrs. Smith, the driver of the Cadillac, was driving a short time or immediately prior to the collision. The testimony of the eyewitness, Mr. White, who was called as appellants' witness, was to the effect that the collision occurred in the most easterly lane for northbound traffic, and that from the time he first saw the Cadillac it did not change directions or traffic lanes. Since this testimony was uncontroverted, there was no requirement for the court to submit the requested issues concerning the lane of traffic in which the Cadillac was travelling. Rule 272, Texas Rules of Civil Procedure; Wright v. Vernon Compress Co., 156 Tex. 474, 296 S.W. 2d 517 (1956); Hamby v. Key, 294 S.W.2d 169 (Tex.Civ.App.—Beaumont 1956, writ ref'd n. r. e.).

■ In the course of the testimony, Officer Clements made reference to a "gouge" mark. In response to the question, "You found one 'gouge' mark in the center lane right close to where the . . . rear end of the Chevrolet was lying?", Officer Clements answered, "Yes, but this isn't necessarily the impact." He said he didn't know whether the "gouge" mark was the point of impact or where the automobiles came together. Thus, the "gouge" mark did not assist Officer Clements in determining the point of impact. Appellants insist that the existence of the "gouge" mark would support an issue as to whether the Cadillac was in the center

or left lane before the collision. The requested issues inquiring as to the lane in which Mrs. Smith was driving was in effect an effort to challenge the eyewitness testimony of appellants' own witness by the circumstantial evidence of a "gouge" mark which could not be identified with any degree of certainty as to what it represented. The authorities uniformly hold that a fact may not be established by circumstantial evidence if it only raises a mere surmise or suspicion of the fact or permits a purely speculative conclusion. The circumstances must be of a character reasonably convincing, and, if an inference consistent with the existence of a fact in issue is but equally as valid as an inference of its nonexistence, and there is no evidence to support the conclusion that the inference of the particular fact is more reasonable, the question may not be submitted to the jury. Texas Pac. Fidelity & Surety Co. v. Hall, 101 S.W.2d 1050 (Tex.Civ. App.—Eastland 1937, writ dism'd), and cases cited therein; Azores v. Samson, 434 S.W.2d 401 (Tex.Civ.App.—Dallas 1968, no writ). We hold that the circumstances existing in this case are too speculative to be entitled to submission to a jury. We hold, further, that the appellants being bound by the testimony of their own witnesses, Polasek v. Quinius, supra, that the court did not err in failing to submit appellants' requested issues concerning the lane in which the Cadillac was travelling a short time before or immediately prior to the time of the collision. Therefore, appellant's points of error Nos. 5 through 9 are overruled.

Appellants' points of error Nos. 10 and 11 deal with the court's refusal to submit appellants' requested special issues inquiring whether Mrs. Smith failed to apply her brakes or whether she failed to reduce her speed. Appellants insist that photographic evidence indicates that the driver of the Cadillac should have had a clear view of the Chevrolet for a distance of approximately 500 feet from the area where the vehicles collided, and even if the Cadil-

lac were travelling 55 to 60 miles per hour at the time of the collision the appellants were entitled to have a submission upon the common law duty to reduce speed or apply brakes under such circumstances. The appellants further insist that the testimony indicates that the Chevrolet vehicle was in distress for approximately 500 feet as it was skidding into the northbound lane of traffic, and that under such circumstances, appellants were entitled to have the jury questions on application of brakes and reduction of speed, and the appropriate inquiries on negligence.

▮ A review of the evidence indicates that Mrs. Smith did not have time to apply her brakes or reduce her speed. The eyewitness, Mr. White, testified that the collision occurred almost immediately after he saw the Cadillac appear on the crest of the hill—within the period of time after seeing the car that it took him to exclaim "My God, they are going to hit." Also, the photographic evidence submitted with reference to the clear view for 500 feet did not take into consideration the movement of the automobiles and does not depict Mrs. Smith's view as she was driving and moving toward the point of the collision. It is our opinion that the circumstances are too speculative and conjectural regarding the existence or nonexistence of the ultimate fact or facts in issue to justify the submission of the requested issues. Texas Pac. Fidelity & Surety Co. v. Hall, supra. We hold, therefore, that the trial court was correct in refusing to submit the requested special issues concerning the application of brakes and reduction of speed of the Cadillac automobile. Appellants' points Nos. 10 and 11 are overruled.

We have determined that the general consistency of the opinions expressed by witnesses Clements, Meyers and Abrahamson as to the relative speed of the Cadillac compare to that of the Chevrolet, based on the hypothetical question submitted, including the assumption of the facts testified to by the eyewitness, Mr. White, as to the

reaction of the vehicles upon impact, together with our findings of the lack of support in the evidence to justify the submission of the special issues requested concerning the alleged acts of negligence on the part of the driver of the Cadillac, support the conclusion that the trial court did not err in admitting the testimony and in refusing the submission of the requested issues. Accordingly, the judgment of the trial court is affirmed.