## Macke v. Globe Indemnity Company.

(Decided May 3, 1927.)

Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division.)

1. Insurance.—Provision in regional agency contract that agreement might be terminated on "30 days' written notice, or instanter for cause, or to withdraw authority from agent to write any classifications of risks or classes of insurance at any time without previous notice," held to authorize withdrawal of authority without notice only with regard to specified risks which company did not desire to write, not to authorize general withdrawal of authority without notice.

2. Insurance.—Insurance agency contract, entitled "Regional Agency Contract," specifying territory, permitting agent to employ subagents to thoroughly canvass territory, and excluding agent from

points outside territory specified, held to give "exclusive agency," though contract did not specifically so provide.

ROBERT C. SIMMONS for appellant.

ORIE S. WARE for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY— Reversing.

On November 23, 1923, the Globe Indemnity Company entered into a written contract with J. M. Macke, doing business as J. M. Macke & Co., by which it appointed Macke its agent in Kenton and Campbell counties, Ky. During the continuance of the agency the Globe Indemnity Company, through another agent acting in Kenton county, issued several policies of liability insurance to the Dixie Traction Company. Alleging that the agency contract was exclusive, and that the business for which he claimed compensation was not controlled by the Globe Indemnity Company or by another from a point or points outside Kenton county, Macke brought this suit to recover his commission of $500 on the policies so issued. A demurrer was sustained to the petition as amended, and the petition was dismissed. Macke appeals.

The case turns on whether the agency contract is exclusive.

Owing to the length of the contract and to the fact that it contains many provisions that have no bearing on the question involved, it will be necessary to refer to, or set out, only such provisions as are material.

The contract is styled "Regional Agency Contract." Sections 2, 3, 4, 5, 6, and 7 are as follows:

"(2) The agent is appointed for the purpose of procuring for the company acceptable applications for classes of insurance hereinafter named and designated opposite lines in schedule item 5, and to receive and receipt for the premiums upon such insurance, and the agent accepts the said appointment subject to all the terms and conditions hereinafter set forth.

"(3) The territory within which the agent shall act is stated in the schedule item 4, except that business controlled by the company or another agent from other points outside the said territory is hereby reserved, and may be made the subject of special agreement.

"(4) The agent shall, subject in all respects to the company's rules, and written, printed and telegraphic intructions and the specific instructions of the officers of the company, thoroughly and efficiently canvass, or cause to be canvassed, the said territory, procure insurance, collect premiums, render accounts, and shall perform generally such other duties and services in connection therewith as shall best promote the interest of the company.

"(5) In consideration of and as full compensation for all services rendered and disbursements made under this agreement, the company will allow the agent during his continuance as such agent, and the agent hereby agrees to accept commission on all net premiums (i. e., gross premiums less return premiums or canceled policies and/or refunds paid or allowed to the assured), collected and paid to the company by the agent upon all policies, indorsements, certificates, and binders issued through the agent upon the classes of insurance designated and at the rates of commission shown opposite such designated lines in item 5 of schedule. Commission on all other classes of insurance not named herein shall be determined by the company. No commission shall be due the agent until the premium is collected and transmitted to the company and received by it.

"(6) The agent agrees to accept as full compensation for services rendered the company or another agent of the company for issuing or countersigning policies of insurance, indorsements, certificates or binders, applications for which shall have been procured by such other agent, a commission of five per cent. (5%) of the paid premium of each such policy, indorsement, certificate or binder, which commission, however, shall in no case exceed the sum of fifteen dollars ($15.00), and the agent agrees to the payment to other agents of the company of a similar countersigning commission on business controlled by him where the risk is located outside of his territory.

"(7) Within the territory covered by this contract and subject to such rules and regulations as may be prescribed by the company, the agent may appoint, subject to the approval of the company, and may supervise subagents and employees reasonably

necessary for the proper transaction of business under this contract. The agent shall be directly liable to the company for all acts and agreements of such subagents and employees so appointed, and the company shall not, under any circumstances or in any manner, be liable for same or any part thereof."

Section 8 provides in part as follows:

"The agent assumes responsibility for, and agrees to pay to the company all premiums, whether advance, deposit, developed, additional or pay roll audit excess premiums on policies issued by or through him, whether direct or for the account of brokers, local agents, or solicitors."

Sections 11, 12, 13, and 15 are as follows:

"(11) The agent agrees during the continuance of this contract not to engage with any other casualty company in conflict with the agency hereby created or to directly or indirectly place with such other company applications, undertakings which the company will accept, nor shall the agent permit any of his employees or any person connected with his office so to do.

"(12) The agent shall not sell, or offer to sell, directly or indirectly, policies of insurance, at any reduction from the rates specified by the company, and shall not transfer, or dispose of any interests, by partnership or otherwise, in the agency created by this agreement, without the written consent of the company.

"(13) The agent shall keep a record of all business done for the company and all books and papers containing a record of the business of the company, together with all books of account, bank books, policy registers, documents and vouchers connected with said business shall be at all times open to the inspection of the company or its authorized representatives."

"(15) The agent agrees to immediately furnish a bond in an amount and with sureties satisfactory to the company for the faithful discharge of and performance of all the duties and obligations herein agreed to be discharged and performed by said agent."

Section 18 provides in part:

"The commissions herein provided are to be paid only on such policies as are actually issued or renewed hereunder during the period through which this agency continues."

By section 20 the agent agrees to pay all the expenses of conducting the agency, except expressage or freight charges on articles sent by the company to the agent.

Sections 21 and 22 are as follows:

"(21) This agreement may be terminated at any time by either party giving to the other thirty days' written notice or instanter for cause, or to withdraw authority from the agent to write any classifications of risks or classes of insurance at any time without previous notice.

"(22) If the company at any time, by reason of unfavorable legislation, or for any other cause, deems it advisable to withdraw its business from the territory herein provided, it shall have the right to terminate this agreement on notice."

Under the headings "Schedule of Commissions" and "Class of Business," are workmen's compensation and employers' liability premiums; liability, property damage and collision premiums; burglary premiums; plate glass premiums; steam boiler engine and flywheel premiums; personal accident and health premiums.

The learned trial judge seems to have been of the opinion that section 21 of the contract providing "this agreement may be terminated at any time by either party giving the other thirty days' written notice, or instanter for cause, or to withdraw authority from the agent to write any classifications of risks or classes of insurance at any time without previous notice," was conclusive of the question. We are unable to agree with this conclusion. The section must be construed as a whole. Under it the agent is entitled to a 30 days' notice of the termination of the contract, unless the contract be terminated for cause, and it would utterly defeat this right under the contract if the company could terminate the contract by withdrawing authority from the agent to write all classifications of risk or kinds of insurance at any time without previous notice. All that this section means, in

our opinion, is that, if at any time the company concludes
not to write certain risks, it may withdraw authority to
write them without previous notice. The correctness of
this view seems to be conceded by counsel for appellee,
but he insists that, because the agent is appointed by sec-
tion 2 "for the purpose of procuring for the company
acceptable applications for classes of insurance herein-
after named," and section 5 provides for the payment of
"commissions on all net premiums collected and paid to
the company by the agent," coupled with the further
fact that the agent is prohibited from representing other
companies, and that the contract does not contain a simi-
lar provision prohibiting the company from employing
other agents, there is no escape from the conclusion that
the contract is not exclusive. The difficulty with this
position is that it overlooks other provisions that have
an important bearing on the question. To begin with,
we have a contract styled a "Regional Agency Con-
tract." The territory in which the agent was to act was
specified. This territory he was to "thoroughly canvass
or cause to be canvassed." He agreed during the con-
tinuance of the contract not to engage with any other
casualty company in conflict with the agency therein
created, and not to permit any of his employees or any
person connected with his office so to do. Within the
territory covered by the contract he was given authority
to appoint, subject to the approval of the company, and
to supervise the work of, subagents and employees
reasonably necessary for the proper transaction of busi-
ness under the contract, and was made directly liable for
all acts and agreements of such subagents and employees
so appointed. Being required not only to devote all of
his time to the business of the company, but to thoroughly
canvass the territory, and being authorized to appoint
subagents and employees reasonably necessary for the
proper transaction of the business under the contract, it
is at once apparent that his duties and powers are broad
enough to cover all business that may be done in the ter-
ritory; thus excluding the idea that there was any busi-
ness left to be attended to by other agents not appointed
by him. Manifestly, if the company could employ one
agent, it could employ as many as it desired, with the
result that the agency would be of no value whatever.
Not only so, but, if it was deemed necessary, as is done
by section 3 of the contract, to reserve business controlled
by the company or another agent from other points out-

side the specified territory, and make it the subject of special agreement, it was all the more necessary to reserve business done by the company or another agent within the territory, and the fact that this was not done is most persuasive that such was not the intention of the parties. For these reasons, and for the further reason that agency contracts usually provide for compensation for services rendered by the agent, we are not disposed to hold that section 5, which provides for the payment of commissions on premiums "collected and paid to the company by the agent," is sufficient to justify the conclusion that the company had the right to do business in the specified territory through other agents. On the contrary, we are constrained to the view that the only fair and reasonable interpretation of the contract as a whole is that it creates an exclusive agency. It follows that the demurrer to the petition should have been overruled.

Judgment reversed and cause remanded for proceedings consistent with this opinion.