**B. L. GRINER, Appellant,**

v.

**D & L WELL SERVICE, Appellee.**

No. 6247.

Court of Civil Appeals of Texas.
Beaumont.

April 9, 1959.

Rehearing Denied May 6, 1959.

D. F. Sanders, Beaumont, Vernon T. Bartley, Dallas, for appellant.

Keith, Mehaffy, McNicholas & Weber, Beaumont, for appellee.

McNEILL, Justice.

This was a suit for damages instituted in a district court of Jefferson County by

plaintiff, B. L. Griner, against defendant, D & L Well Service, in which plaintiff's compensation insurance carrier Pacific Indemnity Company which has paid workmen's compensation insurance benefits intervened. It was alleged that while plaintiff and one D. M. Carter, an employee of D & L Well Service, were carrying a pump from one location to another on an oil lease in the northern part of Beaumont, through negligence of said Carter the pump was allowed to fall upon plaintiff and injure him. After plaintiff had introduced his evidence and rested, the trial court sustained defendant's motion for an instructed verdict, hence this appeal. Since the parties occupy the same position here as in the trial court, we will use their appellations there.

The M. J. Mitchell Oil Company, hereinafter referred to as Mitchell, owned an oil lease upon some land in the northern part of Beaumont and was operating one pumper oil well thereon. This company had six employees, including Herman Allen, Superintendent, and plaintiff, who worked on this lease and certain adjoining leases. About April 20, 1956, Mitchell employed the defendant D & L Well Service to rework the oil well on the lease. This well service sent a rig with an operator and three additional employees to conduct this reworking operation. It furnished all the tools and equipment necessary except the pump which was involved in the accident hereinafter described. While all of the terms of the contract between Mitchell and D & L Well Service were not proven, it was shown that the D & L Well Service charged Mitchell $12 per day for the rig and operator and so much per day for each additional employee furnished. The employees furnished were named D. M. Carter, Carr and two Marcontells. One of the Marcontells was foreman of this crew, but the evidence does not identify which one was the foreman.

The D & L crew had been carrying on the reworking operations for three or four days before April 25th, the day the accident occurred. They had pulled the screen out of the well and cleaned it out. In doing this it was necessary to pump oil back into the hole and in this operation oil dripped out from the ends of the pipe and loose connections onto the surrounding ground. Mitchell owned a Jaguar centrifugal pump on the premises which the D & L crew had used from time to time in their operation. This pump weighed 125 pounds, was 20 inches wide and 2 feet long and was built upon two long boards by which it could be carried. On the morning of April 25th Herman Allen, Mitchell's superintendent, instructed plaintiff to disconnect this pump and take it to another adjacent location to pick up some waste oil from the well operations. When he had disconnected the pump, three of the D & L crew, Carter, Carr and Marcontell, came up and helped move it. Plaintiff carried the front part of the pump on his shoulder and Carter caught hold of the rear end of the supporting boards and held them in his hands, and another employee was helping carry some of the connected hose. In order to move the pump to a new location, they had to cross an earthen firewall or levee which had been built around the well. This firewall was about 3 or 4 feet wide and 12 or 14 inches high. It had rained within the last 48 hours and the dirt was wet. The parties had carried the pump to and upon the firewall along which they had come about 12 feet when plaintiff stepped off of it and at this instant Carter, the man at the rear of the pump, slipped, his feet going out from under him and he sat "plumb down", both of his legs hitting plaintiff on the leg, who at the time was pulled backwards and the pump fell upon him, causing the injuries complained of.

His testimony clearly established that plaintiff was at the time involved an employee and doing work he was given to do by Herman Allen, Mitchell's foreman. Not only was there no proof as to whose duty it was to retrieve the loose oil on the ground, but the proof is silent as to who instructed the D & L crew to assist in

moving the pump. Carter, Carr and Marcontell of the crew were present but whether this Marcontell was their foreman was not shown. While plaintiff testified he did not know who gave the orders to Carter, Carr and Marcontell to help him, he stated that these men were not subject to the orders of Mitchell as they had their own foreman. The testimony also fails to show the length or width of the boards fastened to the base or legs of the pump and to what extent a person carrying the rear end could see the ground just in front of him.

■ Viewing the testimony from the standpoint most favorable to plaintiff, as we are required to do since a preemptory instruction was given against him, the testimony describing the incident which gave rise to this controversy, in addition to what has been set out above, is as follows: Plaintiff testified that as they were carrying the pump along the firewall Carter, Carr and Marcontell were laughing and talking with each other, and while he did not warn Carter that he was going to step down off of the firewall, yet if he had been paying attention he could have seen him do so; that the conversation carried on by the three men was not necessarily the sort of thing you would expect among oilfield workers when they have got a jog going on. The testimony of L. D. Davis, Jr., Assistant Superintendent for Mitchell, was, in substance, that when he drove up in his car and had walked around the machine he heard some laughter and loud talking, and that as he looked up he saw the man at the rear end (Carter) start down with the pump like he fell. He stated that he saw Carter for just a fraction of an instant before he slipped and fell and that Carter was then looking to one side; he did not know whether Carter was talking to the other employees or not or whether he was looking at the ground but he caught the pump in his lap as he fell down and this pulled the plaintiff backwards.

Plaintiff argues that this testimony raised issues for the jury on the following grounds of negligence: (1) Carter failed to keep a proper lookout on the occasion in question; (2) Carter failed to warn plaintiff that he was going to drop the pump on the occasion in question; (3) Carter was looking at and talking to some of his co-employees while carrying the pump on the occasion in question.

■ (1) The circumstances that tend to show Carter failed to keep a proper lookout: the record discloses general conversation among the three D & L men but does not satisfactorily show that immediately preceding the instant of the slipping and falling Carter was either laughing or talking. We should not assume that ordinary laughing and talking among men at work create a harmful atmosphere. However, if engaged in to an unusual extent it could divert one's attention from the task he is doing. In our case to reach the conclusion that his attention was so diverted, it must be assumed that immediately before he slipped Carter was thus engaged and to an extent sufficient to interfere with his work. To do so would be placing one presumption upon another which we are not permitted to do. The burden is on the plaintiff to establish a state of facts from which the jury may conclude there is negligence and this he has not done. Hamby v. Key, Tex.Civ.App., 294 S.W.2d 169; Comet Motor Freight Lines v. Holmes, Tex.Civ.App., 175 S.W.2d 464, 467. The accident was reasonably explained upon the basis that the ground was wet or muddy and this caused Carter to slip and fall. " * * * the mere happening of an accident is no evidence at all of negligence * * *." Wells v. Texas Pacific Coal & Oil Co., 140 Tex. 2, 164 S.W.2d 660, 662.

Appellant cites St. Louis, Southwestern Ry. Co. of Texas v. Gillenwater, Tex.Com. App., 294 S.W. 173, Gulf, C. & S. F. Ry. Co. v. Smart, Tex.Civ.App., 222 S.W.2d 161 and Railway Express Agency v. Gray, Tex. Civ.App., 211 S.W.2d 1013, as supporting his view that the issue of negligence on the part of Carter was raised so as to require submission to the jury. The Gillenwater

case involved a fact situation where the defendant's employee turned loose of a coupler which fell on the plaintiff and injured him. The evidence showed that the coupler could not stand unless someone was holding it and further showed that the employee for some unknown reason turned loose of the coupler and let it fall on the plaintiff. The appellate court obviously held there was sufficient evidence to show negligence on the part of the employee, since, unlike our case, there was absolutely no explanation for the action of the defendant's employee. On the other hand, in our case here Carter did not turn loose of the pump or deliberately permit it to fall, but rather the reason for the accident here was supplied by plaintiff's own testimony wherein he admitted that Carter slipped and fell while descending the muddy firewall. The Smart case sets out testimony from which it was shown clearly that the rail fell on him—no other conclusion could be drawn therefrom. The third case cited is in every material respect comparable to the Gillenwater case—there was no explanation as to why the fellow employee failed to hold back on the safe which fell upon a co-worker.

■ (2) On the second ground of negligence that Carter failed to warn plaintiff that he was going to drop the pump. Plaintiff testified that "although Carter gave me no warning that he was going to fall, he did have time enough to have given me warning." This appears to be purely an opinion of plaintiff for which he gives no factual background. Evidently the accident was over in an instant. This is indicated by Mr. Davis, who said it occurred suddenly. No issue of fact is raised under the second ground alleged.

(3) Since the third ground of negligence sets forth in an affirmative way the same facts which we have held do not raise an issue on the first ground alleged, we forego discussion of the third ground.

Defendant by counterpoints has asserted under the "loaned servant" doctrine that plaintiff and Carter were at the time of the incident employees of the same employer, that is, they were employees of Mitchell or in the alternative employees of D & L Well Service, each of which had workmen's compensation insurance and therefore this action is improperly brought. Since we have held that there is no evidence to raise an issue to go to the jury on the ground of negligence, we pretermit discussion of these counterpoints.

The judgment of the trial court is affirmed.