Jo Ann ESCAMILLA, Appellant,

v.

Jesus GARCIA, Appellee.

No. 16690.

Court of Appeals of Texas, San Antonio.

April 27, 1983.
Rehearing Denied May 26, 1983.

Robert B. Thornton, San Antonio, for appellant.

Joe Meador, San Antonio, for appellee.

Before CADENA, C.J., and TIJERINA and DIAL, JJ.

## OPINION

DIAL, Justice.

Appellant, Jo Ann Escamilla, appeals from a judgment for personal injury damages arising out of a two-vehicle collision. The judgment was rendered jointly and severally against appellant and Manuel Rangel Solis, the driver of the vehicle in which appellant was riding at the time of the collision.

On February 18, 1977, appellant was a front-seat passenger in Solis' car when Solis turned across a lane of oncoming traffic into the path of the car driven by appellee, Jesus Garcia. A collision ensued and appellant was taken to the hospital for treatment.

At the trial, a jury found that the collision was proximately caused by the negligence of both appellant and Solis, with 80% of such negligence being attributed to Solis and 20% being attributed to appellant. The jury awarded appellee $144,450.00 to compensate for past and future medical expenses, past and future pain and anguish, past loss of earnings, and future loss of earning capacity.

■ Appellant presents 12 points of error. The first six are based upon the assertion that there was insufficient evidence, or, alternatively, no evidence, upon which the jury could conclude that the appellant was 20% negligent; therefore, appellant contends, the trial court should have granted appellant's Motion for Judgment non obstante veredicto, and appellant's motion for new trial. In determining a "no evidence" point, which is a question of law, the reviewing court considers only that evidence and the reasonable inferences therefrom which, viewed in its most favorable light, supports the jury finding and must reject all evidence or inferences contrary to the finding. *Mead v. Johnson Group, Inc.,* 615 S.W.2d 685, 688 (Tex.1981).

After examining the record, we find that although the evidence of appellant's negligence is not extensive, it does, in fact, exist. Because, due to a concussion, appellant had no memory of the events immediately preceding the collision, and no one else was in a position to observe her actions, Solis was the only witness able to testify concerning appellant's conduct. Solis's testimony from the stand or by deposition was that as he made the left turn, appellant had been sitting next to him, and she yelled and grabbed at him or the steering wheel in a manner that distracted him and prevented him from avoiding the accident.

Q. And I believe you also testified on your deposition before that Jo Ann didn't interfere with your operation

of the vehicle or distract you or divert you in any way other than she yelled that there's going to be—that you were going to get hit, isn't that correct?

A. Well, when she yelled that, you know, that did distract me.

Q. That distracted you?

A. Yes, sir.

Q. But that's the only thing?

A. No sir. She, you know, when I started to turn she yelled.

Q. Okay. Mr. Solis, please speak up, the court reporter is trying to get all this down, it's very important that he get this testimony.

A. Okay. When she yelled, as I remember it, she was reaching, you know, like she was going to get hit, and I tried to get her, but I couldn't.

Q. She was reaching toward the door?

A. No, towards me.

Q. But she didn't touch you?

A. No, sir. But I went like that, you know, I took my hand off the wheel.

Q. Okay. You did that after she warned you that you were going to get hit and that's when you got hit?

A. Yes, sir.

Q. All she did was just reach out and yell, is that what you are saying?

A. Yes, sir.

\*   \*   \*   \*   \*   \*

Q: All right. Let me read some more questions to you. "So, is it your position or testimony ... Mr. Solis, that Ms. Escamilla diverted your attention from the road by either grabbing your arm?" "Uh-huh." The answer was "uh-huh." "Trying to pull the steering wheel?" And you indicated affirmatively. And I said, "You have to say yes or no." And your answer was "Oh! Yes." Question, "Hollering at you?" "Yeah." Did you give me those answers to those questions?

A. Yes, sir.

Q. Were they true answers?

A. Yes, sir.

Q. I asked you these questions and I want you to tell me if the answers are true today just like you told me in front of the court reporter back in October, 1979, and just like you are testifying under oath today. "And when she was distracting or diverting your attention, did that prevent you from driving your automobile in a normal manner?" Answer, "Yes, sir." Question, "And when she was diverting you, did that prevent you from doing the things that you ordinarily would have done in turning your automobile?" Answer, "Yes, sir." Question, "And when she was diverting your attention, did that cause you to do things that you ordinarily would not have done?" "Yes, sir ... I got excited, after awhile. Nervous. I don't know what you call it." Question, "And, therefore, I assume, Mr. Solis, that it is your position that Ms. Escamilla was involved, in some way, in causing this accident?" Answer, "Yes, sir." Did you give me those answers, sir?

A. Yes, sir.

\*   \*   \*   \*   \*   \*

Q. Okay. I asked you these questions and let me see if you gave the answers then and if they are true today. "Do you know how far your car was out of the roadway, when the impact occurred?" Answer, "No, sir." "Tell me when Ms. Escamilla started—and I think your testimony was she started to slide over to the door like she always did; and that distracted your attention somewhat?" Answer, "Yes." Question, "Okay. If she was sitting next to the door, how could she slide over towards the door?" Answer, "She was always moving over, when she said, 'I think he's going to hit you.'" Question, "You mean she moved over toward you?" Answer, "Yes, sir, she was with me. You know, she was like,

you know, sitting—I said, 'I'm not going to bite you,' you know, she moved over. She started to move over when I started to turn. She said, 'Oh, he's going to hit you;' and I—" Question, "Let me see if I understand that. Lots of times people will drive automobiles and the driver will be right behind the steering wheel and his girlfriend or his date or his wife will be sitting right next to him." "Yeah." "You know, where the hump is in the car, the transmission is?" "Yeah." "Lots of times the girl friend will be sitting way over, hugging the door. Okay. Now, my question to you, was Ms. Escamilla sitting right next to you or was she sitting over next to the door?" Answer, "She was sitting next to the door. Then, she came over next to me." "So, she got over next to you?" "Yeah." "And that's when you all decided to make your turn?" "Yeah." "And you said when she—'Come on over next to me, I'm not going to bite you'?" "Yeah." "So, then, you started to make your left turn?" "Yeah." Did you give me those answers, Mr. Solis?

A. Yes, sir.

This testimony was first taken in a deposition before trial, and many of Solis' answers were reaffirmed in his testimony during trial.

■ A court may enter a judgment non obstante veredicto only if the material jury findings are without support in the evidence or are contrary to conclusive evidence. *Pate v. Southern Pacific Transport Company,* 567 S.W.2d 805, 807 (Tex.Civ. App.—Houston 1977, writ ref'd n.r.e.). The jury could have believed that where appellant was sitting or her actions just before the accident contributed to its cause. Viewing the evidence in the light most fa-

vorable to the jury's findings, as we are required to do, we hold that Solis's testimony does constitute probative evidence upon which the jury could base its finding of appellant's comparative negligence. *Pate, supra.* Therefore, the trial court's denial of appellant's motion for judgment non obstante veredicto and motion for new trial was not error. *See Berlow v. Sheraton Dallas Corp.,* 629 S.W.2d 818, 821 (Tex.Civ. App.—Dallas 1982, writ ref'd n.r.e.).

■ Another issue raised in appellant's first six grounds of error is whether or not the record contains sufficient evidence to support the jury verdict attributing negligence to appellant. After examining the entire record, we find that there is sufficient evidence of probative force, or factual sufficiency, to support the jury's verdict. In so doing, we have considered and weighed all the evidence and have determined that the verdict is not so against the great weight and preponderance of the evidence as to be manifestly unjust and in need of setting aside and remanding for a new trial. *Adams v. Morris,* 584 S.W.2d 712, 719 (Tex.Civ.App.—Tyler 1979, no writ history). It was for the jury to determine the credibility of witnesses and the weight to be given each one's testimony. *Bibbs v. Massey,* 516 S.W.2d 273, 275 (Tex.Civ.App. 1974), and we leave the jury's finding undisturbed.

■ In final reference to points of error one through six, appellant argues that because she was a passenger, the only duty of care she owed to appellee was a duty not to interfere with the driver's operation of the vehicle prior to any negligent act committed by the driver.[1] Appellant maintains that the only acts she committed which even remotely suggest a breach of the duty of reasonable care, occurred subsequent to the time Solis began his left turn. Appellant concludes that she was, therefore, not

1. "Whether or not a legal duty exists under a given state of facts and circumstances is essentially a question of law for the court." *Webb v. City of Lubbock,* 380 S.W.2d 135, 136 (Tex.Civ. App.—Amarillo 1964, writ ref'd n.r.e.). The trial court determined that under the facts presented appellant owed a duty of care to appellee, and submitted the issue of appellant's comparative negligence to the jury. Counsel for appellant neither objected to nor questioned such submission at that time.

negligent, in that she did not breach her duty of care to appellee.

We find that appellant's argument concerns a distinction without a difference. Although Solis may have begun his left turn prior to appellant's interference, there is testimony that had his driving remained uninterrupted, he may have pulled into the adjacent driveway and avoided the collision. In *Adams, supra* at 717, the court held that "[w]hether or not a passenger's conduct, as measured by the standard of ordinary care, constituted negligence is a question of fact for the jury." The jury heard the testimony at trial and decided that appellant's conduct was a contributing cause of the collision. Because there is evidence upon which that decision could be based, it is not for this court to disturb the jury's resolution of the factual issue. Appellant's points of error one through six are overruled.

In points of error seven through twelve, appellant argues that even if she was negligent, the trial court erred in failing to grant her amended motion for new trial because there was no evidence, or in the alternative, insufficient evidence, to support the jury's findings that her conduct was a proximate cause of the accident, or because the jury's answers were against the great weight and preponderance of the evidence. These points of error are overruled.

In *McClure v. Allied Stores of Texas,* 608 S.W.2d 901, 903 (Tex.1980), the Supreme Court held that "proximate cause cannot be established by mere guess or conjecture, but rather, must be proved by evidence of probative force." We have held, upon examination of the record, that there is sufficient factual evidence, or evidence of probative force, from which the jury could conclude that appellant's actions were a contributing cause of the collision. The question of whether there was sufficient evidence to decide that appellant's conduct was a proximate cause of the collision is implicitly determined in the affirmative, within that holding; and we now make that express determination in overruling appellant's points of error seven through twelve.

The judgment is affirmed.

CADENA, Chief Justice, dissenting.

Appellant's complaints are that there is no evidence or, in the alternative, insufficient evidence to support the jury finding that appellant was guilty of negligence proximately causing the accident in question.

Under appellant's "no evidence" point, the majority correctly considers only the evidence, and the inferences reasonably drawn therefrom which, when viewed in the light most favorable to support the findings, support the verdict.

The testimony of Solis was merely that when appellant cried out to warn him of the impending collision and started moving away from the side of the car which was about to, and did, receive the full brunt of the impact, he was "distracted" and reached out toward her, taking his hand from the steering wheel. Because of this distraction or diversion, he was prevented "from doing the things that [he] ordinarily would have done in turning" his automobile, and caused him "to do things that [he] ordinarily would not have done." He stated that it was his "position" that appellant "was involved, in some way, in causing this accident."

In order to hold that such testimony is evidence that appellant was guilty of negligence proximately causing the accident, we must make several assumptions. First, we must infer that there was something which Solis could have done to avoid the accident but for the diversion or distraction. There is no testimony that Solis could have taken any particular evasive action or done anything to avoid the collision after appellant warned him of the danger. The only thing which Solis did which he would not otherwise have done was to take his "hand" off the steering wheel. There is no evidence that this action in any way caused the accident. Solis did not testify that he lost control of his vehicle, and there is no evidence that at the time of the collision, or before the collision, the Solis vehicle was out of control. Did the distraction prevent him from applying the brakes? There is no

evidence which supports such inference. Would he have accelerated in order to remove his vehicle from the path of the oncoming Garcia truck? He did not say so, nor is there any other evidence suggesting such possibility. Would he have turned to the right, or to the left, or started to back up and thus avoid the collision? There is no testimony which supports these inferences or any one of them. Viewing the evidence in the light most favorable to the verdict and ignoring all evidence tending to support a conclusion different from that reached by the jury, the result, nevertheless, is that appellant was not guilty of any negligence which was even the cause in fact of the accident. Under these circumstances, it cannot be said that she was guilty of any negligence which was the proximate cause of the collision.

In effect, all that the evidence reflects is that it was the "position" of Solis that appellant, "in some way", was "involved . . . in causing the accident." In effect, giving the greatest possible effect to the self-exculpatory statements of Solis, his position is, simply stated: "It was her fault. If she had not warned me of the danger or moved away from the point of impact, I would have done something to avoid the collision, or I would not have done something which I did." He doesn't tell us what he would have done or what he would have avoided doing." To conclude that such testimony is some evidence that appellant's conduct was somehow the cause of the accident amounts to more than engaging in mere speculation and surmise. It amounts to sheer fantasy. A jury finding cannot be based on speculation or surmise. It certainly cannot rest on fantasy.

The conclusion of the majority that the finding is not based on insufficient evidence is supported only by the naked statement that the entire testimony has been examined. The only evidence referred to in the majority opinion is that which, in the opinion of the majority, would support the verdict if all contrary evidence is disregarded. An examination of the entire testimony reveals the following:

1. Garcia, the driver of the other vehicle, testified that the Solis vehicle, suddenly and without warning, turned to the left directly in front of him, giving him no time to do anything to avoid the collision. He did not know who was driving the Solis vehicle and did not know what was occurring inside the vehicle. This is certainly not sufficient evidence to support a finding that appellant did anything which caused the collision.

2. Solis testified that as he was proceeding in an easterly direction on Highway 90, he and appellant decided they should return to the place from which they had set out originally. In order to do this, he decided to make a left turn into a clinic which was approachable by a driveway, thus enabling him to change his direction and proceed upward to the west. He was familiar with that portion of Highway 90 and knew that he was approaching the site of a clinic, located on the left of the highway, onto which led a driveway. He knew that the driveway leading to the clinic had a "dip" or "bump" which required that a vehicle entering the driveway do so at a reduced speed in order to avoid damage to one's vehicle.

3. As he approached the spot where he would have to make a left turn, he noted that approaching headlights indicated that two vehicles were travelling side-by-side in the two westward bound lanes. He testified that the vehicle in the outside western bound lane, the Garcia truck, was travelling in excess of 40 miles per hour.

4. Before he reached the point at which he began his turn to the left, intending to go across the highway onto the driveway leading to the clinic parking lot, he slowed his vehicle. Before he began the left turn, he was travelling at a speed of 35 miles per hour. He slowed down in order to make the turn and because he knew that, due to the bump or dip in the driveway, he could not avoid damage to his vehicle without slowing down.

5. At the time he began his turn to the left, the Garcia vehicle, approaching at a speed in excess of 40 miles per hour, was

about 20 to 30 yards away. He had completed his turn and the front part of his vehicle was on the driveway and off the highway at the time that appellant shouted her warning and began to move away from the side of the car which was going to be struck.

6. As his vehicle came onto the highway, he stepped on the brakes in order to further reduce his speed as he approached the bump or dip in the driveway. He did not realize at that time that the rear end of his vehicle was still on the westbound lane of the highway. At this point, appellant shouted her warning and moved away from the passenger side of the vehicle toward him.

7. When his vehicle was on the driveway, he was looking straight ahead toward the driveway and the parking lot onto which the driveway led and was not looking to his left to observe the oncoming traffic headed in a westerly direction.

8. Appellant at no time touched him or the steering wheel of his vehicle.

9. When appellant shouted the warning, he turned his head to the left, in the direction of the oncoming traffic, and "reached" for appellant.

10. After appellant shouted her warning, Solis did not attempt to do anything different from that which he was doing. He merely continued driving "through the hump." His vehicle did not come to a stop before the collision.

11. He did not attempt to accelerate when appellant warned him of the danger. He did not testify that appellant's actions prevented him from accelerating. Instead, he testified succinctly concerning his failure to accelerate after appellant had warned him. He said: "If you step on the gas, all you're going to do is run your car into the—because it goes like this, when you go down like that. You step on the gas, all you're going to do is hit the back or hit the front." The record suggests no other explanation for his failure to "step on the gas" after appellant's warning shout.

12. The impact occurred immediately after appellant's warning shout. He did not have time to do anything after she warned him of the impending collision.

We may accept as truth the statement from Solis that appellant's actions "distracted". But, it is clear that in the absence of such distraction, he would have continued doing what he was doing, slowing down as he approached the hump or dip, looking straight ahead toward the driveway and parking lot, away from the oncoming traffic, unaware of any danger and unaware that part of his vehicle was jutting out onto the highway in the lane in which the Garcia vehicle was approaching him at a speed in excess of 40 miles per hour. It is abundantly clear that if plaintiff had not been in the car, Solis would have done nothing to avoid the accident, because he was completely unaware of the danger of a collision. Clearly, ignorant of the proximity of the oncoming vehicle, he would not have accelerated, because he did not want to approach the dip or bump except at a reduced speed which to avoid "messing up" the rear or front end of his vehicle.

It cannot be said that the evidence justifies the conclusion that appellant's instinctive reactions to the impending collision prevented Solis from doing something to avoid the accident or caused him to do something which was a cause of the accident. If we give full credence to the claim of Solis that appellant's actions "distracted" or "diverted" him, the conclusion is unavoidable that he was distracted or diverted only from continuing to do what he was doing before such distraction. That is, he was distracted from looking straight ahead toward the driveway and parking lot, unconcerned about oncoming traffic, and applying the brakes to avoid "messing up" his vehicle.

It is not necessary to determine whether appellant would have been negligent if she had failed to warn Solis of the danger of which she was aware and of which he was ignorant because of his preoccupation with slowing his vehicle and his lack of knowledge that part of his vehicle was still on the highway. *See* 7A Am.Jur.2d *Automobiles and Highway Traffic* § 596.

I would hold that there is no evidence that appellant was guilty of any negligence proximately causing the accident. *Cf. Griner v. D. & L. Well Service,* 324 S.W.2d 231, 234 (Tex.Civ.App.—Beaumont 1959, writ ref'd n.r.e.). In any event, it is clear that the jury's finding concerning appellant's negligence and its proximate connection to the accident is not supported by sufficient evidence.