

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00407-CV

**RUSSELL EQUESTRIAN CENTER, INC.**, John William Russell, Individually and d/b/a
Russell Equestrian Center, and Shane Brashar Russell,
Appellants

v.

Samantha **MILLER** a/k/a Samantha Parker,
Appellee

From the County Court at Law No. 2, Bexar County, Texas
Trial Court No. 358456
Honorable Irene Rios, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice
Dissenting and Concurring Opinion by:  Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  June 5, 2013

AFFIRMED IN PART, REVERSED AND RENDERED IN PART

This case arises from a collision between Appellee Samantha Miller's vehicle and two horses that escaped from the Russell Equestrian Center, Inc. Russell Equestrian Center, Inc., John W. Russell, and Shane B. Russell appeal the trial court's judgment on a jury verdict in favor of Miller on her claims of negligence and gross negligence. They assert that the trial court erred in admitting the testimony of Miller's expert and that the evidence at trial was legally insufficient to support the jury's finding of negligence and gross negligence. Because we conclude the

evidence was legally sufficient as to negligence and legally insufficient as to gross negligence, we affirm in part and reverse in part the trial court's judgment.

BACKGROUND

Russell Equestrian Center, Inc. (the Center) is a horse boarding and training facility located on Scenic Loop Road in San Antonio, Texas. The Center is owned and operated by John Russell and his wife, Shane Russell. The Center's perimeter is lined with a permanent fence (the perimeter fence). The Center's entryway is located on the portion of the perimeter fence separating Scenic Loop Road from the Center. This entryway did not contain a functioning gate; rather, there was gap in the perimeter fence.[1] The perimeter fence encompassed, among other buildings, barns, covered arenas, and the Russells' residence. Within the perimeter fence and towards the back of the Center, was a pasture enclosed by a smaller electric fence (the electric fence). This fence was electrified by strands of poly tape. On the night before the incident, four horses were confined in the pasture enclosed by the electric fence.

On the day of the accident, Miller, an elementary school teacher, was driving her car in the early morning on her way to work when she collided with two horses that escaped from the Center and made their way onto the road. Miller was injured and her car was totaled. Miller sued John Russell, Shane Russell, and Russell Equestrian Center, Inc. (collectively Russell Equestrian), asserting causes of action for negligence, negligence per se, and gross negligence. After a week-long jury trial, the jury returned a verdict in Miller's favor. The jury found John Russell and Shane Russell negligent and grossly negligent, and held Russell Equestrian Center, Inc. vicariously liable for all damages.

---

[1] At one point, a functioning gate closed the gap in the perimeter fence at the Center's entryway. However, the Russells' testimony reveals that the motor had been stolen off the gate about a year before the accident, and had not been replaced. At the time of incident in this case, a gate was sitting near the entryway, but "was not operational in any way."

On appeal, Russell Equestrian challenges the legal sufficiency of the testimony of Robert Kingsbery, Miller's expert, and the jury's negligence and gross negligence findings. Specifically, Russell Equestrian asserts (1) the expert's testimony was conclusory and speculative and the trial court abused its discretion by failing to exclude it, (2) the evidence was insufficient on proximate causation and thus did not support the jury's finding of negligence, and (3) the evidence did not satisfy the heightened clear and convincing standard required for a gross negligence finding.

**EXPERT TESTIMONY**

Russell Equestrian argues that Kingsbery's testimony was conclusory, speculative, and unreliable, and it should not have been admitted.

**A.      Standard of Review**

Trial courts have broad discretion in determining the admissibility of expert testimony. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 578 (Tex. 2006); *U.S. Renal Care, Inc. v. Jaafar*, 345 S.W.3d 600, 606–07 (Tex. App.—San Antonio 2011, pet. denied).  Thus, we review the trial court's ruling on the admissibility of expert testimony for an abuse of discretion.  *Tamez*, 206 S.W.3d at 578; *Jaafar*, 345 S.W.3d at 606–07.

**B.      Applicable Law**

Texas Rule of Evidence 702 governs the admissibility of expert testimony.  *See* TEX. R. EVID. 702.  The rule states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."  *Id.*; *accord Jaafar*, 345 S.W.3d at 606.  The proponent

of expert testimony bears the burden of showing the testimony is admissible. *Tamez*, 206 S.W.3d at 578; *Jaafar*, 345 S.W.3d at 606.

Admissibility of expert testimony is governed by a two-prong test: the proponent of the testimony must show that the expert witness is qualified and that the testimony "is relevant to the issues in the case and is based upon a reliable foundation." *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995); *accord Jaafar*, 345 S.W.3d at 606. "If the expert's testimony is not reliable, it is not evidence." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 713 (Tex. 1997). Expert testimony is unreliable if there exists "too great an analytical gap between the data and the opinion proffered." *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "Opinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact 'more probable or less probable.'" *Coastal Transp. Co. v. Crown Cent. Petrol. Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) (quoting TEX. R. EVID. 401). Conclusory or speculative testimony is incompetent and cannot support a judgment. *Id.*

The Texas Supreme Court has "dr[awn] a distinction between challenges to an expert's scientific methodology and 'no evidence challenges where, on the face of the record, the evidence lacked probative value.'" *Id.* at 233 (quoting *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 412 (Tex. 1998)); *accord City of San Antonio v. Pollock*, 284 S.W.3d 809, 817 (Tex. 2009). "When the testimony is challenged as conclusory or speculative and therefore non-probative on its face, . . . there is no need to go beyond the face of the record to test its reliability." *Coastal Transp. Co.*, 136 S.W.3d at 233; *accord Pollock*, 284 S.W.3d at 817. "[E]ven when some basis is offered for an opinion, if that basis does not, on its face, support the opinion, the opinion is still conclusory." *Pollock*, 284 S.W.3d at 817.

**C. Analysis**

Russell Equestrian asserts that Kingsbery's testimony is conclusory and speculative because it fails to explain how the alleged inadequacies of the electric fence and absence of a gate on the perimeter fence proximately caused the horses' escape. *See Gammill*, 972 S.W.2d at 726.

The uncontroverted evidence at trial shows that two "T-posts" on the electric fence were bent and the corner of that fence was "blown out." Miller offered the testimony of Kingsbery, an expert on the proper installation of electric fencing for containing livestock. Kingsbery testified that the electric fence used to contain the horses at the Center was a temporary fence designed for use within an existing perimeter fence to control livestock and that poly tape manufacturers recommend that temporary electric fencing not be used as the sole means of containing livestock. He stated that the electric fence was improperly installed because it contained an inadequate number of ground rods and the manner in which the electrical wire was attached to the ground rod was improper. Kingsbery also testified that Russell Equestrian should have either installed a gate across the entryway or an actual physical barrier or perimeter fence to keep the horses in. In his opinion, a closed gate on the perimeter fence would have prevented the horses' escape. Ultimately, he opined that the Russells were negligent for failing to install a gate across the entryway to the Center and containing horses by a temporary, instead of a permanent, electric fence.

Although Kingsbery testified that the electric fence was inadequate, he never stated that the horses escaped because of the alleged inadequacies. Quite the reverse, he testified he did not know the precise manner in which the horses escaped, only that "generally an animal has to make actual contact with the T-post in order to make it bend" the way the posts bent in this case.

Moreover, although he surmised that the horses would not have escaped had they been contained within a perimeter fence instead of a temporary electric fence, or had a gate been in place on the Center's perimeter fence, he admitted that had the horses run headlong into the electric fence, even a perimeter fence would not have contained them. He did not propose that the horses escaped the electric fence in any other manner. Moreover, he did not explain how failure to have a perimeter gate was negligent. Therefore, Kingsbery's testimony was speculative and conclusory, and should have been excluded in its entirety. *See Coastal Transp. Co.*, 136 S.W.3d at 232. We sustain Russell Equestrian's first point of error. Having determined that Kingsbery's testimony is not entitled to probative weight, we must next determine whether Miller offered other legally sufficient evidence of negligence.

## NEGLIGENCE

In its second point on appeal, Russell Equestrian challenges the legal sufficiency of the jury's negligence finding. Russell Equestrian complains the evidence at trial failed to show that the horses' escape was proximately caused by its negligence.

### A. Standard of Review

In reviewing the record for legally sufficient evidence, we must view the evidence "in the light most favorable to the verdict, and indulge every reasonable inference that would support it." *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *accord Cumpian v. Pan Am. Express, Inc.*, 147 S.W.3d 515, 516 (Tex. App.—San Antonio 2004, no pet.). The evidence is legally sufficient if "more than a scintilla of evidence exists." *Cumpian*, 147 S.W.3d at 516; *see Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). "More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable

minds about a vital fact's existence." *Cumpian*, 147 S.W.3d at 517; *see Serv. Corp. Int'l*, 348 S.W.3d at 228.

## B. Applicable Law

"The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty." *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995); *Spears v. Coffee*, 153 S.W.3d 103, 106 (Tex. App.—San Antonio 2004, no pet.). Neither ownership of a horse, nor ownership of the premises on which the horse is contained, creates a rebuttable presumption that the horse's presence on a highway is due to negligence of the horse owner or premises owner. *See Beck v. Sheppard*, 566 S.W.2d 569, 573 (Tex. 1978). Because Russell Equestrian specifically complains the evidence at trial was legally insufficient to support a finding of proximate cause, we focus our analysis on this element.

Proximate cause consists of two elements: (1) cause in fact and (2) foreseeability. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex. 1985); *accord Spears*, 153 S.W.3d at 106. "Cause in fact denotes that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred." *Nixon*, 690 S.W.2d at 549; *accord Spears*, 153 S.W.3d at 106. "Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Nixon*, 690 S.W.2d at 549–50; *accord Spears*, 153 S.W.3d at 106. The element of "[p]roximate cause cannot be established by mere guess or conjecture, but rather must be proved by evidence of probative force." *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex. 1980); *accord Escamilla v. Garcia*, 653 S.W.2d 58, 62 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.). "[B]oth negligence and proximate cause may be inferred from the

circumstances surrounding an event, so that it is not necessary to prove these elements of a cause of action by direct and positive testimony." *Sherwin-Williams Paint Co. v. Card*, 449 S.W.2d 317, 320 (Tex. Civ. App.—San Antonio 1970, no writ); *see Lynch v. Ricketts*, 314 S.W.2d 273, 275–76 (Tex. 1958); *Hous. E. & W. Tex. Ry. Co. v. Boone*, 146 S.W. 533, 535 (Tex. 1912).

## C. Analysis

The evidence at trial that supported the jury's finding of negligence, and specifically the element of proximate cause, included John Russell's testimony that there was no question in his mind that the horses exited the Center through the gap in the perimeter fence at the Center's entryway, and that if there had been a gate in place, the horses would not have gotten on the road. *See City of Keller*, 168 S.W.3d at 822; *Cumpian*, 147 S.W.3d at 516–17. John Russell also testified that it was "more likely right than wrong" that the horses would not have caused the accident at issue in this case if the gate had been shut. Shane Russell testified to the same, agreeing that had there been a gate, the horses would not have escaped and the accident would not have occurred. In other words, but for the absence of a functional gate, no harm would have occurred in this case. Therefore, the record contains more than a scintilla of evidence supporting cause in fact. *See Serv. Corp. Int'l*, 348 S.W.3d at 228; *Nixon*, 690 S.W.2d at 549; *Spears*, 153 S.W.3d at 106; *Cumpian*, 147 S.W.3d at 517.

In addition, a reasonable trier of fact could have inferred that the purpose of Russell Equestrian's electric fence was to contain horses through the delivery of electric shock.[2] The Russells testified that they were aware that at least one of the four strands of poly tape on the electric fence was not electrified—John Russell testified that one strand was not electrified, and

---

[2] The trial court included the following instruction in its jury charge: "'Circumstantial Evidence' A fact may be established by direct evidence or circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witness who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved."

Shane Russell testified that two strands were not electrified. The evidence further shows that Russell Equestrian chose not to ensure there was a functional gate at the entryway to the Center. From this evidence, a reasonable trier of fact could have concluded that a person of ordinary intelligence should have anticipated the danger that the horses would escape from the partially-electrified fence, and make their way through the gap in the perimeter fence where there was no functional gate and onto Scenic Loop Road where they would collide with a passing vehicle. *See Nixon*, 690 S.W.2d at 549–50; *Spears*, 153 S.W.3d at 106. Therefore, the record contains more than a scintilla of evidence supporting the element of foreseeability. *See Nixon*, 690 S.W.2d at 549–50; *Spears*, 153 S.W.3d at 106.

**D. Legally Sufficient Evidence of Negligence**

Reviewing the evidence in the light most favorable to the finding, we conclude the Russells' direct testimony, as well as the circumstantial evidence pertaining to the condition of the electric fence and the horses' escape, furnished a reasonable basis for the jury to conclude that the Russells' negligence proximately caused the horses' escape. *See Serv. Corp. Int'l*, 348 S.W.3d at 228; *City of Keller*, 168 S.W.3d at 822; *Cumpian*, 147 S.W.3d at 517; *see also Boone*, 146 S.W. at 535; *Card*, 449 S.W.2d at 320. Therefore, the record contains more than a scintilla of evidence in support of the jury's finding on negligence. *See Serv. Corp. Int'l*, 348 S.W.3d at 228; *Cumpian*, 147 S.W.3d at 517. Accordingly, we overrule Russell Equestrian's second point of error.

GROSS NEGLIGENCE

Russell Equestrian next challenges the legal sufficiency of the jury's gross negligence finding. Specifically, Russell Equestrian complains the evidence at trial failed to establish that

the electric fence posed an extreme risk to others and that the Russells had actual, subjective awareness of the risk but nevertheless acted with conscious indifference to that risk.

## A. Standard of Review

"Gross negligence must be proven by clear and convincing evidence." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(3) (West 2008). "'Clear and convincing' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(2); *see U-Haul Int'l Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). In reviewing the legal sufficiency of a finding that was required to be proved by clear and convincing evidence, we view the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *see Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004).

## B. Applicable Law

Gross negligence consists of two elements: "extreme risk" and "actual awareness." *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). To support a finding of gross negligence, a party must show that

> (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; **and** (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

*Lee Lewis Constr., Inc.*, 70 S.W.3d at 785 (emphasis added); TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11) (West 2008). "[I]n other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246–47 (Tex. 1999); *accord Terry v. Garcia*, 800 S.W.2d 854, 856 (Tex. App.—San Antonio 1990, writ denied). The element of extreme degree of risk contemplates "the likelihood of serious injury to the plaintiff" rather than "a remote possibility of injury or even a high probability of minor harm." *Ellender*, 968 S.W.2d at 921. We examine this risk "prospectively from the perspective of the actor, not in hindsight." *Hogue*, 271 S.W.3d at 248; *see Convalescent Servs., Inc. v. Schultz*, 921 S.W.2d 731, 735 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

## C. Analysis

At trial, Miller had the burden to show that the Russells were subjectively aware of an extreme risk but nevertheless proceeded in conscious indifference of that risk. *See Lee Lewis Constr., Inc.*, 70 S.W.3d at 785; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11). We have identified three related risks associated with Miller's injury: (1) the risk that the horses would escape the electric fence, (2) the risk that the horses would escape the perimeter fence through the missing gate, and (3) the risk that the horses would be hit on Scenic Loop Road.

John Russell admitted that if horses got out onto Scenic Loop Road, there was a fairly good chance they would be hit by a passing vehicle. But if the horses could not escape the perimeter fence through the missing gate, there would have been no risk that they would reach the road and be hit by a vehicle. The Russells testified that if the perimeter fence contained a functional gate, and that gate had been shut, the horses would not have escaped and caused the accident. But if the horses could not escape the electric fence, there would have been no risk that

they would escape the perimeter fence through the missing gate and thus no risk of being struck by a vehicle on Scenic Loop Road.

Given the necessary conditions that the horses had to escape from the electric fence and from the perimeter fence before there could be a risk of their being struck on Scenic Loop Road, Miller had to show the Russells were subjectively aware of the risk involved in utilizing a temporary electric fence to contain the horses. *See Waldrip*, 380 S.W.3d at 137 (requiring plaintiff to establish that defendants were subjectively aware that a vehicle's parking-brake system was not functional); *Diamond Shamrock Refining Co. v. Hall*, 168 S.W.3d 164, 173 (Tex. 2005) (finding no evidence of subjective awareness where evidence showed defendant's employees actually and subjectively believed they had locked-out the crane or that the crane was locked-out by someone else).

The Russells testified that they had used the same temporary electric fencing from which the horses escaped for the past fifteen years, and in those years, no horse had ever escaped the electric fence. John Russell also testified that he did not believe the horses would get out of that type of enclosure. Therefore, the record contains no evidence that the Russells were subjectively aware of the risk that the horses would escape the temporary electric fence. *See Lee Lewis Constr., Inc.*, 70 S.W.3d at 785; TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11). Moreover, although the Russells' testimony about the gate indicates their subjective awareness at the time they testified, it does not establish that they were prospectively aware of the risk that the horses might escape the perimeter fence through the missing gate at the time the events occurred. *See Hogue*, 271 S.W.3d at 248; *Schultz*, 921 S.W.2d at 735.

Viewing the evidence in the light most favorable to the jury's finding, we nevertheless cannot conclude that "a reasonable trier of fact could have formed a firm belief or conviction"

that Miller proved gross negligence by clear and convincing evidence.  *See In re J.F.C.*, 96 S.W.3d at 266; *see also Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004).

## D.  No Evidence of Gross Negligence

We conclude that Miller failed to establish by clear and convincing evidence that the Russells were actually and subjectively aware of the extreme risk of harm at the time the accident occurred.  Therefore, the evidence was legally insufficient to support the jury's gross negligence verdict.  *See In re J.F.C.*, 96 S.W.3d at 266; *see also Garza*, 164 S.W.3d at 627.

### CONCLUSION

We conclude that Kingsbery's testimony was unreliable, and thus the trial court erred in admitting it.  However, this error was harmless because the record contained legally sufficient evidence to support the jury's negligence finding.  Accordingly, we affirm the negligence claim portion of the trial court's judgment.  Because we conclude Miller failed to establish by clear and convincing evidence that the Russells were actually and subjectively aware of the extreme risk of harm at the time the accident occurred, we reverse the gross negligence claim portion of the trial court's judgment and render judgment that Miller take nothing on her gross negligence claim. We affirm the remainder of the judgment.

Patricia O. Alvarez, Justice